UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Case No. 10-20123
v.                                  Honorable Victoria A. Roberts
                                        Magistrate Judge Paul J. Komives

DAVID STONE, JR., et al.,

        Respondent.

_____/

**DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND
RECOMMENDATION TO DENY STONE, JR.'S MOTION TO DISMISS**

**NOW COMES** Defendant, **DAVID STONE, JR.**, by his attorneys, **RICHARD M.
HELFRICK** and **TODD A. SHANKER** of the Federal Defender Office and, pursuant to Fed. R.
Civ. P. 72(b) and 28 USC §636(b)(1), respectfully raises the following objections to the
Magistrate's Report and Recommendation to Deny Stone, Jr.'s Motion to Dismiss Counts 1-7.
R. 269, 1/12/2011.[1]

Standard of Review

      A magistrate judge's Report and Recommendation on a dispositive motion is reviewed *de
novo* by the District Judge.  28 USC §636(b)(1).  In making the following objections, counsel
incorporates by reference all arguments made in his Briefs in support of the Motion to Dismiss
Indictment.  R. 198, 9/21/10; R. 238, 11/19/10.

---

     [1]     As the Magistrate found, and the Government previously conceded, Counts 1-7
hinge on the charge of seditious conspiracy.  See R. 269, 1/12/2011, p. 3; R. 232, 11/5/2010, p. 4.

Objections and Argument

I.      **The defendants are charged with seditious conspiracy based on an alleged plot to kill "an unidentified member of local law enforcement" to be followed by an "attack on law enforcement vehicles during the funeral procession." The Indictment is flawed in four distinct ways, as the alleged means:  (a) do not involve the use of force against the United States government; (b) do not involve the use of force while the United States government is asserting its authority; (c) do not involve resistance to the United States government while attempting to enforce or execute its gun laws; and (d) do not involve the use of imminent force against the United States government.**

When a statute proscribes acts which implicate freedom of expression, such legislation "'must be taken to use its words in a strict and accurate sense.'" *Hartzel v. United States*, 322 U.S. 680, 686 (1944).  A legislature's declaration by statute that certain types of speech or thought constitute a crime "cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 843-844 (1978).  "[T]he judicial function commands analysis of whether the specific conduct charged falls within the reach of the statute." *Id*.  Viewed objectively, if the conduct alleged in the indictment does not constitute a violation of the Federal statute charged, the indictment "must be dismissed as a matter of law." *United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997); *United States v. Baker*, 890 F.Supp. 1375, 1382 (E.D. Mich. 1995).

The Report & Recommendation (R&R) asserts that the Indictment is sufficient because the seditious conspiracy charge (18 U.S.C. §2384) alleges that the Hutaree's objective was to "provok[e] an armed confrontation with local and federal law enforcement officials" and to "use force against them when they attempted to enforce federal law."  R. 198 at p. 7, 9, 10.  However,

2

the particularly alleged means[2] do not involve the use of force against the United States government, much less force "brought to resist some positive assertion of authority" by the United States government "while endeavoring to carry the laws into execution." *Baldwin v. Franks*, 120 U.S. 678, 693 (1852)(dismissing seditious conspiracy charges). Both the means and the objective must involve force to be exerted "against those whose duty it should be to execute the laws" of the United States government, "and while attempting to do so." *Anderson v. United States*, 273 F. 20, 25-27 (8th Cir. 1921)(dismissing seditious conspiracy charges).

The "general plan" alleged in ¶3-4 of Count 1 is against generic "law enforcement" officers and does not mention Federal law enforcement officials. The United States Government is only mentioned in the final sentence of ¶4, and not as part of the means. Rather, the sentence merely recites the Hutaree's wishes regarding actions by others once the "plan" was complete. The hopes of a sparking an uprising by others against the United States Government does not, and cannot, establish a seditious conspiracy by the Hutaree. *Baldwin*, 120 U.S. at 693; *Anderson*, 273 F. at 26. The Indictment does not state that the plot alleged "could have furthered the goals of a seditious conspiracy beyond the statement that the defendants thought it did. That is not enough." *United States v. Rahman*, 854 F. Supp. 254, 260 (S.D.N.Y. 1994). See R. 175, First Superseding Indictment, Count 1, ¶4, p. 7 (alleging the Hutaree "believed... such an engagement would be a catalyst for a more widespread uprising against the United States").

Similarly, the particular "plan" alleged in ¶5(c) does not establish a seditious conspiracy even in the light most favorable to the prosecution. According to the Indictment, the plan was to kill "an unidentified member of local law enforcement" followed by an "attack on law

---

[2] First Superseding Indictment, Count 1, ¶3, 4, 5(c).

enforcement vehicles during the funeral procession." See ¶5(c). There is nothing more alleged, and again, there is no mention of the United States Government or Federal law enforcement. The Indictment simply fails to allege a nmeans that articulates the basic elements of seditious conspiracy.

The acts of force that comprise the plan alleged in the Indictment as the means to accomplish the charged objective: (a) do not involve the use of force against the United States government; (b) do not involve the use of force while the United States government is asserting its authority; (c) do not involve resistance to the United States government while attempting to enforce or execute its gun laws; and (d) do not involve the use of imminent force against the United States government. *Baldwin*, 120 U.S. at 693; *Anderson*, 273 F. at 25-27; *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969). The applicability of the "imminence" element is dealt with in Arguments II and III below.

II.  **The *Brandenburg* standard applies in this case because: (1) the Supreme Court and the majority of circuit courts have applied the clear and present danger/imminence test to conspiracy cases; (2) the charge of seditious conspiracy in this case is premised on the expressive content of the defendants' alleged anti-government speech, associations, and assemblies, all core political expression under the First Amendment; and (3) the Indictment specifically charges that the defendant's "discussed" and "advocated" violence against law enforcement officers, clearly raising the First Amendment issue in the plain language of the charging document.**

      A.  The Supreme Court and majority of Circuit Courts have applied the clear and present danger/imminence test to conspiracy cases.

According to the Magistrate's Report and Recommendation (R&R), *Brandenburg* only applies to statutes that "proscribe mere advocacy." R. 269, 1/12/2011, p. 14. The R&R states that the First Amendment and the clear-and-present-danger/*Brandenburg* requirement do not apply to the charges in this case and that "none" of the cases cited by defendant "involved a conspiracy to actually commit unlawful acts." R. 269, 1/12/2011, p. 18-19. These findings are contradicted by a wealth of Supreme Court and Circuit Court cases.

Justice Oliver Wendell Holmes articulated and applied the clear-and-present-danger test for the first time in a case where the defendant was charged with **conspiracy** to violate the Espionage Act. *Schenk v. United States*, 249 U.S. 47, 52 (1919). "[E]xactly fifty years after *Schenk*, the Supreme Court finally and unambiguously embraced the Holmes-Brandeis version of clear and present danger" in *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969*)*. G. Stone, Perilous Times: Free Speech In Wartime 522 (2004). To be sure, in *Brandenburg*, the Supreme Court explicitly overruled *Whitney v. California*, 274 U.S. 357, 371-372 (1927), a case upholding a state syndicalism provision that was for all intents and purposes a seditious conspiracy statute.

*Brandenburg*, 395 U.S. at 449.  The indictment in *Whitney* alleged that defendants were

"combining with others in an association for the accomplishment of the desired ends through the

advocacy **and use of criminal and unlawful methods**," or as the Court described it, a **"criminal**

**conspiracy"** to "menac[e] the peace and welfare of the State."  *Whitney*, 274 U.S. at 371-372

(emphasis added).

As Justice Louis Brandeis stated in his concurring opinion in *Whitney*, which, along with

Justice Holmes' opinion in *Schenk*, provided the blueprint for the *Brandenburg* decision: "[A

statutory declaration] does not preclude enquiry into the question whether, at the time and under

the circumstances, the conditions existed which are essential to validity under the Federal

Constitution. . . . Whenever the fundamental rights of free speech and assembly are alleged to

have been invaded, it must remain open to a defendant to present the issue whether there actually

did exist at the time a clear danger; whether the danger, if any, was imminent; and whether the

evil apprehended was one so substantial as to justify the stringent restriction interposed by the

legislature...  The wide difference between advocacy and incitement, between preparation and

attempt, and between assembling and conspiracy, must be borne in mind."  *Whitney*, 274 U.S. at

378-379, J. Brandeis, concurring.

The Supreme Court also applied the clear-and-present-danger test to conspiracy charges

in *Dennis v. United States*, 341 U.S. 494, 515 (1951)(conspiracy to advocate overthrow of the

U.S. government) and *Hartzel v. United States*, 322 U.S. 680, 687 (1944)(conspiracy to violate

the Espionage Act, attempt to violate the Espionage Act, and willful obstruction of the

recruitment and enlistment of the military).

The R&R states that *Hartzel* did not involve a "conspiracy to actually commit unlawful

acts." R. 269, 1/12/2011, p. 18. This is simply incorrect. The defendant in *Hartzel* was charged with and found guilty of "conspiracy to violate Section 3" of the Espionage Act; the Supreme Court reversed that conviction, as well as those for attempt and actual obstruction. *Hartzel*, 322 U.S. at 681. The Court specifically stated that whether the criminalized expression created "a clear and present danger" constituted an "element" of the offenses charged that must be "proved by the Government beyond a reasonable doubt." *Id*. at 687.

In *Herndon v. Lowry*, the Supreme Court invalidated a conviction based on an Indictment charging defendant with attempt to incite insurrection through "combined resistance to the lawful authority of the state with intent to deny, defeat, and to overthrow such authority by open force, violent means, and unlawful acts" – an offense strikingly similar to seditious conspiracy, but one that required substantial steps toward the actual commission of the crime *beyond* a mere inchoate agreement or decision. *Herndon v. Lowry*, 301 U.S. 242, 245 (1937). The Court found the statute was unconstitutional as applied to the defendant. *Id*. at 261. The R&R's assertion that "none of the reasoning employed by the Court... suggests that imminence must be shown in a case involving conspiracy" is incorrect. R. 269, 1/12/2011, p. 17. The Supreme Court specifically held that as-applied to the defendant, the proof failed to "beget a clear and present danger of forcible obstruction of a particular [government] function." *Id*.

The R&R attempts to distinguish *Hess* v. *Indiana* as a case involving "mere advocacy, not a conspiracy to actually commit" an unlawful act. R. 269, 1/12/2011, p. 17. This casts a blind eye to the fact that the defendant was not charged with an inchoate offense at all – he was charged with **actually committing** the offense of disorderly conduct. The Court reversed the defendant's conviction as a violation of his First Amendment right to free speech. *Hess v.*

*Indiana*, 414 U.S. 105, 108 (1973).

The upshot of *Hess* was reaffirmed by the Supreme Court in the *Ashcroft* case: "The government may not prohibit *speech* because it increases the chance of an unlawful act 'at some indefinite future time.'" *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002*) quoting Hess*, 414 U.S. at 108 (emphasis added). The Court explained that for the offenses of "attempt, incitement, solicitation and conspiracy," *Brandenburg* provides the vital distinction "between words and deeds, [and] between ideas and conduct." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253-254 (2002).[3] The *Ashcroft* opinion, in invoking *Brandenburg*, also hearkened back to the blueprint for that decision, contained in Justice Brandeis' concurrence in *Whitney*. Namely, that the clear and present danger test was the difference "between advocacy and incitement, between preparation and attempt, and between assembling and conspiracy." *Whitney*, 274 U.S. at 376.

The R&R cites two Circuit Court cases in support of its argument. The first is *United States v. Rahman*, 189 F.3d 88 (2nd Cir. 1999). Prior to Rahman's trial for seditious conspiracy, the defendant filed a Motion to Dismiss, arguing that he could not be prosecuted for his religious speech because it received blanket protection by the First Amendment. The district court judge specifically held that the *Brandenburg* test applied when he denied the Motion. *United States v. Rahman*, 1994 WL 388927, *1-2 (S.D.N.Y. 1994). Judge Michael Mukasey held: "It is both possible and permissible to charge that criminal statutes were violated entirely by means of

---

[3]     The Supreme Court's forceful assertion regarding the applicability of *Brandenburg* came three years after *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), the circuit court case upon which the government relies. Moreover, the *Rahman* appeal did not involve any dispute regarding "imminence." Similarly, any factual comparison between the instant case and *Rahman* is far-fetched.

speech... if that speech was intended and likely to generate imminent criminal action by others. *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969)." *Id*. Given that Rahman argued only that he was immune from prosecution for his religious speech, regardless of whether his speech created an imminent danger, it is problematic for the R&R to describe this as merely a "further" reason for denying the Motion. Whatever the case, the R&R concedes the fact that *Brandenburg* was applied. R. 269, 1/12/2011, p. 16.[4]

In *Rahman*, no defendant ever argued that the conspiracy lacked imminence under *Brandenburg* – not at trial and not on appeal. To be sure, there was no serious lack-of-imminence argument that could have been mustered by Rahman or his co-defendants. Unlike the present case, the charges in *Rahman* alleged that the conspirators had already committed criminally lethal overt actions in furtherance of their conspiracy. *Rahman*, 189 F.3d at 129. At the time of the indictment in *Rahman*, the defendants had already significantly aided, abetted and assisted in the February 1993 bombing of the World Trade Center - causing six deaths and substantial destruction; they had planned the Spring 1993 campaign of attempted bombings of bridges and tunnels in New York City; recruited sufficient participants to carry out the plan;

---

[4] The R&R refers to Judge Mukasey's finding that when speech is used to commit a crime, the First Amendment "does not insulate such crime from prosecution." R. 269, *id*. (emphasis added). Counsel for defendant does not disagree with this finding at all. It is a fact that speech is at times an inherent part, or even the very vehicle of crime itself. That is not the issue raised in this case. The question here is: Once a prosecution is initiated for allegedly criminal speech, does *Brandenburg* apply when the Indictment charges a defendant with "seditious conspiracy;" raises the issue of imminence on the face of the document (unlike the Indictment in Rahman, where imminence was a foregone conclusion); and plainly alleges constitutionally protected expression – here, anti-government "advoca[cy]," "views," "beliefs," "discuss[ion]," "meetings," "training," "associat[ion]," and "members[hip]" in a "militia." See R. 175, First Superseding Indictment, p. 2, 3, 4, 5, 6, 7, 9, 10. Unlike Rahman, David Stone, Jr. is not claiming he is immune from prosecution; he is claiming that *Brandenburg* invalidates the Indictment.

rented a "safehouse" to build the bombs; completed an elaborate diagram of the "bombing plan;"

reconnoitered the potential targets of the bombs by driving through and videotaping the tunnels

and discussing the structure of the tunnels with an engineer;  purchased what they believed to be

the necessary components for the bombs, including oil, fertilizer, timers,  and barrels in which to

mix the explosives; attempted to find stolen cars in which to carry the bombs; obtained a

"submachine gun" to assist in carrying out the plan; and even began constructing the bombs and

mixing the explosives.  The conspirators had already attempted to murder Hosni Mubarak when

he was present at the United Nations in New York City, and had successfully murdered Meir

Kahane, a rabbi and leader of a small radical group opposed to any Arab presence within the

biblically defined borders of Israel. *Rahman*, 189 F.3d at 103, 107-108, 111, 129.

In a word, *Rahman* is inapposite. It is also a poor vehicle for the proposition that

*Brandenburg* is inapplicable in a seditious conspiracy case. The district court judge in *Rahman*

and a long line of Supreme Court and Circuit Court cases have firmly established that

*Brandenburg* does apply in conspiracy cases where the Indictment implicates First Amendment

rights and embodies in its plain language the issue of imminence.

The other Circuit case cited in the R&R, *United States v. Bell*, concedes that "[m]ost

[Circuit] Courts have generally demanded that all expression, advocacy or not, meet the

*Brandenburg* test before its regulation for its tendency to incite violence is permitted." *United

States v. Bell*, 414 F.3d 474, 482 n.8 (3rd Cir. 2005).  The *Bell* Court noted further that the Sixth

Circuit is among this majority of courts that apply  *Brandenburg* more expansively, i.e.

"advocacy or not." *Id*. citing *James v. Meow Media, Inc.*, 300 F.3d 683, 698-699 (6th Cir. 2002);

*see also Honey v. Goodman*, 432 F.2d 333, 338 (6th Cir. 1970)(holding that government may

punish speech pursuant to criminal statutes *if* the words "are of such a nature as to create a clear and present danger that they will bring about" the charged crime).

The *Brandenburg* test was also recently applied in a case charging the defendants with conspiracy to commit interstate stalking, conspiracy to use a telecommunications device to abuse, threaten, and harass, and conspiracy to violate the Animal Enterprise Protection Act (AEPA). *United States v. Fullmer*, 584 F.3d 132, 154 (3rd Cir. 2009); *see also United States v. Phipps*, 595 F.3d 243, 247 (5th Cir. 2010)(applying *Brandenburg* to mail-wire fraud, aiding and abetting, and corrupt endeavoring to obstruct internal revenue laws); *United States v. Kelly*, 864 F.2d 569, 577 (7th Cir. 1989)(same); *United States v. Dellinger*, 472 F.2d 340, 349 (7th Cir. 1972)("conspiracy" to "not only... incite, organize, promote and encourage a riot, but also to commit acts of violence in furtherance of a riot, and to aid and abet persons in such activities, as well as to" teach "the use of incendiary devices with knowledge that they will be used in a civil disorder.").

Similarly, the "imminence" test has invalidated convictions for conspiracy to "injure, oppress, threaten or intimidate" in order to violate another's civil rights (*United States v. Lee*, 6 F.2d 1952 (8th Cir. 1993)); solicitation (*People v. Salazar*, 362 N.W.2d 913, 917-918 (Mich. Ct. App. 1985)); conspiracy to defraud the United States government (*United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983)); and conspiracy to incite violence against the United States government (*United States v. Silverman*, 248 F.2d 671 (2nd Cir. 1957)).

In sum, the argument that *Brandenburg* applies only to crimes of advocacy, and that no cases have applied the imminence requirement to conspiracy, should be rejected. This limited view of the First Amendment is contradicted by a cascade of authoritative jurisprudence from the Supreme Court and the majority of Circuit Courts.

> B.   The First Amendment is the core issue in this case – which involves charges, speech, assemblies, and associations that are all inherently political.

Throughout history, sedition and conspiracy charges have proven to be a governmental bludgeon used to hammer into submission the rights to free expression, association, and assembly.  G. Stone, Perilous Times: Free Speech In Wartime 12-14 (2004). The crimes of sedition and insurrection are inherently political, and these time-worn "formulae for the repression of expression... can claim no talismanic immunity from... the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).  In fact, it was the fear-driven passage of the Sedition Act of 1798, and the subsequent political persecution that masqueraded as enforcement, which "first crystallized a national awareness of the central meaning of the First Amendment." *Id*. at 273-274. "Seditious libel is protected speech unless the danger is not only grave but imminent." *American Booksellers Association, Inc. v. Hudnut*, 771 F.2d 323 (7th Cir. 1985) citing *Brandenburg*, *Id*.; in accord *Sullivan*, *Id*.; *Garrison v. State of La.*, 379 U.S. 64, 70 (1964)(applying "clear-and-present-danger standard" to criminal libel prosecution).  The speech involved here - while offensive - is precisely the type of speech that requires First Amendment scrutiny.  Free speech "best serves its higher purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).

The First Amendment states that "Congress shall make no law abridging the freedom of speech[.]" U.S. Const. I.  Even speech that a "vast majority of its citizens believe to be... fraught with evil" cannot be punished unless there is a clear and present danger.  *Whitney v. California*, 274 U.S. 357, 374 (1927)(J. Brandeis, conccurring).  The First Amendment also protects the

12

penumbra of rights that are essential to freedom of expression, such as the right of association and assembly. *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460-461 (1958). Government action which "may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.*; *in accord Elfbrandt v. Russell*, 384 U.S. 11, 19 (1966).

The Supreme Court has made it clear that when a criminal statute is content-based, on its face or as applied, the law is "presumptively invalid." *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 382 (1992). Only if the speech falls into one of the categories the Court has determined to involve "slight social value" is it even "proscribable." *Id.* at 387. These categories are: obscenity; defamation; fighting words; true threats; and advocacy that is intended and likely to incite or produce imminent lawless action. *Id.* at 382; *Virginia v. Black*, 538 U.S. 343, 359-360 (2003).[5]

The R&R flips *R.A.V.*'s First Amendment analysis on its head, reasoning that government may "constitutionally proscribe" speech unless the charge/statute involves "mere advocacy," at which point imminent danger is required. R. 269, 1/12/2011, p. 16. This fails to acknowledge that when a statute such as seditious conspiracy is applied based on the content of otherwise core First Amendment speech, the charge necessarily involves advocacy – if only when the alleged conspirators articulate and confirm a criminal agreement.

As First Amendment scholar Eugene Volokh has emphasized with regard to expression and conspiracy: "When a generally applicable law is content-based *as applied* – when speech triggers the law because of the harms that may flow from what the speech says – the law should

---

[5]     The government makes no claim that the speech involved in this case constituted "true threats" and, in fact, could not do so. See *Black*, 538 U.S. at 359-360.

be subject to full-fledged First Amendment scrutiny." Eugene Volokh, *Speech as Conduct: Generally Applicable Laws, Illegal Courses of Conduct, "Situation Altering Utterances," and the Uncharted Zones*, 90 Cornell L. Rev. 1277, 1284 (2005)(emphasis in original). "Agreements literally involve nothing but speech. A conspiracy is formed not by the agreement inside each conspirator's head, which co-conspirators and jurors usually won't learn about, but by the *expression* of that agreement to the co-coconspirators." Volokh, *id*. at 1335, note 295. Even if the agreement is expressed without words, and through acts alone, those acts constitute "expressive conduct" under the First Amendment if it is this conduct that "triggers" application of the criminal law. *Id*.; *in accord Texas v. Johnson*, 491 U.S. 397, 409 (1989). This case involves speech, association, and assembly addressed to "political and social change" that is desired or anticipated by the people. *Connick v. Myers*, 461 U.S. 138, 145 (1983). As applied, statutes affecting the "equally fundamental" rights of assembly and association must observe the distinction between mere presence, and presence that is intended and likely to produce imminent lawless action. *Brandenburg*, 395 U.S. at 449. The attempt to criminalize this core political speech – in this particular case – requires application of the *Brandenburg* standard.

> C.  Even if *Brandenburg* only applied to crimes involving advocacy, the Indictment in this case specifically charges the defendants with anti-government advocacy.

Even if the R&R's narrow application of *Brandenburg* to cases involving "advocacy" were the law, the imminence standard is applicable in this case because of the politically-premised charge ("seditious conspiracy") and the plain language of the Indictment, which alleges the defendants use of constitutionally protected expression as a primary basis for the seditious conspiracy charge. This includes anti-government "advoca[cy]," "views," "beliefs,"

"discuss[ion]," and "meetings" as well as "associat[ion]" with –  and "members[hip]" in – a "militia."  See  R. 175, First Superseding Indictment, p. 2, 3, 4, 5, 6, 7, 9, 10.  So even under a more constricted view of the First Amendment, *Brandenburg* applies here.

The language used in the Indictment provides a compelling object lesson on the blurred distinctions between discussion, advocacy, and conspiracy without *Brandenburg*'s bold demarcation between expression and crime: whether the speech is "directed to inciting or producing imminent lawless action and... likely to incite or produce such action."  *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969*)*.

The government's decision to charge a crime that Congress has an interest in preventing does not immunize the prosecution or the statute from the First Amendment. The controversial political expression involved in this case goes to the heart of the First Amendment right to freedom of speech, association, and assembly.  The question of whether political expression crosses the lines from bluster to rhetoric to advocacy of illegal conduct to crime is not and cannot be resolved based on the whims of the government's charging decision or its characterization of the speech involved.[6]   But in this particular case, the Government's charging decision and choice of language in the First Superseding Indictment militate that the First Amendment provides the core issue in this case and that *Brandenburg* applies.

---

[6]     The Supreme Court has repeatedly denounced government attempts to "foreclose the exercise of constitutional rights by mere labels." *See NAACP v. Button*, 371 U.S. 415, 429 (1963); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).

**III.    The Court must dismiss the Indictment if, in the light most favorable to the government, the allegations of seditious conspiracy fail to establish imminence pursuant to *Brandenburg*, for the Supreme Court has stated that the test operates as "the addition of an element" in order to render a statute constitutionally sound as applied to a particular defendant.**

The application of the First Amendment is both a legal question for the district court and a factual question for the jury. *Schaefer v. United States*, 251 U.S. 466, 483 (1920); *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1982). The Supreme Court has determined that, in practice, *Brandenburg*'s imminence requirement operates as "the addition of an element... to the definition of a criminal offense in order to narrow its scope" in accord with the Constitution. *Ring v. Arizona*, 536 U.S. 584, 606-607 (2002). The government has the burden of proving that speech and/or association is unprotected by the First Amendment. *Texas v. Johnson*, 491 U.S. 397, 409 (1989); *Healy v. James*, 408 U.S. 169, 186 (1972). Whether the criminalized expression creates "a clear and present danger" constitutes an "element" of the offenses charged that must be "proved by the Government beyond a reasonable doubt." *Hartzel v. United States*, 322 U.S. 680, 687 (1944)(reversing convictions for conspiracy to violate the Espionage Act, attempt to violate the Espionage Act, and willful obstruction of the recruitment and enlistment of the military).

The Supreme Court has reaffirmed that "the government may not prohibit speech because it increases the chance of an unlawful act 'at some indefinite future time[,]'" and that *Brandenburg* provides the vital distinction "between words and deeds, [and] between ideas and conduct" for the offenses of "attempt, incitement, solicitation and conspiracy." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253-54 (2002) *quoting Hess v. Indiana*, 414 U.S. 105, 108 (1973). After all, *Brandenburg* did not merely find the Ohio Syndicalism statute *facially*

16

unconstitutional because it explicitly criminalized "advocacy" of violence and terrorism without any distinction for the speech's proximity to criminal conduct. *Id*. at 448. The Court also found the statute was unconstitutional *as applied* to the government's indictment because the charging instrument failed to "refine" or "distinguish" the speech charged as amounting to an "incitement to imminent lawless action." *Id*. at 448-449.

If the government fails to properly plead an offense that implicates the First Amendment, the court must dismiss the indictment. *Brandenburg*, 395 U.S. at 447; *United States v. Baker*, 890 F.Supp. 1375, 1382 (E.D. Mich. 1995). Here, the Indictment fails to allege a means involving any force, much less imminent force, against the United States government. Both are necessary elements of an indictment for seditious conspiracy. As a result, the Indictment fails to properly allege the offense charged and the statute is unconstitutional as applied to the defendants in this case.

## Conclusion

For all these reasons, David Stone, Jr. respectfully requests that this Honorable Court dismiss counts 1-7 in the First Superseding Indictment.

Respectfully submitted,

Legal Aid & Defender Association
**FEDERAL DEFENDER OFFICE**

s/ Richard M. Helfrick
E-mail: Richard_Helfrick@fd.org

s/ Todd A. Shanker
E-mail: Todd_Shanker@fd.org
Counsel for David Stone, Jr.
613 Abbott St., 5th Floor
Detroit, MI 48226
Dated: January 25, 2011                    (313) 967-5542

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 10-20123

v.                                 Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

        Respondent.

_____/

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 25, 2011, I electronically filed the attached Objections with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

                       Magistrate Judge Paul Komives

                       Sheldon N. Light
                       Joseph Falvey
                       Jonathan Tukel
                       Assistant U.S. Attorneys

                       Respectfully submitted,

                       Legal Aid & Defender Association
                       **Federal Defender Office**

                       s/ Todd A. Shanker
                       613 Abbott St., 5th Floor
                       Detroit, MI 48226
                       Phone:  (313) 967-5542