UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NUMBER: 10-20123
                                HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, et al.,

        Defendant.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR AN EVIDENTIARY HEARING ON THE ADMISSIBILITY OF SEIZED ANTI-GOVERNMENT LITERATURE AND THE ADMISSIBILITY OF GOVERNMENT EXPERIMENTS OR RE-ENACTMENTS**

**I.    INTRODUCTION**

Defendant Thomas William Piatek moved the Court in limine (Doc. 511) for an evidentiary hearing to determine the admissibility at trial of two categories of evidence: (1) "evidence, testimony and/or exhibits pertaining to books, magazines, novels, video tapes, DVDs or other forms of literature seized from [his] residence, motor vehicle or computer"; and (2) "evidence, testimony and/or exhibits pertaining to Government conducted experiments, re-enactments or demonstrations."  All Defendants join in the motion.

The Court **DENIES** Defendants' motion as to both the seized literature and the Government experiments.  However, the seized literature motion is denied without prejudice.  Defendants may refile the motion if necessary.

**II.    BACKGROUND**

Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2)

Conspiracy to use Weapons of Mass Destruction (18 U.S.C. §2332a(a)(2)); (3) Use and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)); (4) Possessing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §924(c)(1)). Defendants David Stone, David Stone, Jr., and Joshua Stone are charged with various other weapons-related offenses.

Defendant Piatek says that during the execution of search warrants the Government seized certain books, magazines, novels, videos, and other forms of literature that it intends to use in its case in chief. Mr. Piatek believes these items "can generically be described as right-wing, militia-based in content and political-perspective/orientation." The Government says that on March 27, 2010, it seized anti-government and conspiracy theory literature and books at a number of the Defendants' residences. Among other things, the seized items warn of the imminent coming of the Apocalypse, World War III, or the "New World Order," and express outrage at the federal government for its alleged role in vast conspiracies. The seized items have been, and continue to be, available for inspection by Defendants.

Defendant also says that he learned through discovery that the Government engaged in a number of experiments or re-enactments. The Government says that it requested the Federal Bureau of Investigation (FBI) Crime Laboratory to make replica explosive devices of the bombs Hutaree members had either built, had the materials to build, or asked the undercover FBI agent to build. Supervisory Special Agent (SSA) Stryker made several explosive devices using the same plans utilized by the Hutaree, using similar materials to those found at Defendant's Tomer Road residence, and exploded them next to cars or plastic silhouettes. The explosive devices and

experiments were photographed and videotaped. The photos and videos, along with SSA Stryker's reports documenting the experiments, were disclosed to the defense.

## III. LAW AND ANALYSIS

### A. Seized Anti-Government Literature

Defendants say that the seized literature is not relevant under Fed. R. Evid. 401 and, therefore, must be excluded under Rule 402. And, even if the literature possesses some probative value, it is "substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury," and should be excluded under Rule 403. Defendants say the Court must rule on the admissibility of the seized literature outside the presence of the jury in order to avoid its prejudicial effect.

The Government says that the type of evidence at issue is routinely admissible in cases concerning conspiracy, intent, or knowledge to indicate the defendant's state of mind. The Government cites many cases where similar evidence was properly admitted for a variety of purposes, including: (1) to indicate intent; (2) to indicate motive; (3) to establish a relationship among co-conspirators; (4) to prove defendants had the ability to accomplish the goals of the conspiracy; and (5) to refute the theory that defendant was engaging in "mere puffery." The Government also says that Defendants' motion should be denied because they had the ability to inspect the seized material for months, yet they failed to cite any tract or book to which they specifically object.

Courts are rightly reluctant to admit evidence of a person's literary taste or political views against him in a criminal prosecution, but books and other literary materials are not categorically inadmissible. Rather, courts must determine the

admissibility of literature on a case-by-case basis.

Defendants rely on cases from the Ninth Circuit to support their argument that the seized literature is inadmissible. *See United States v. Waters*, 627 F.3d 345, 355 (9th Cir. 2010) ("[W]e observe that a defendant's choice of reading material will rarely have a particularly significant probative value."); *United States v. Geise*, 597 F.2d 1170, 1185 (9th Cir. 1979) ("[W]e wish to emphasize that we are not establishing a general rule that the government may use a person's reading habits, literary tastes, or political views as evidence against him in a criminal prosecution. In many cases such evidence would be clearly inadmissible."). Neither of these cases holds that literary texts are categorically inadmissible. The Ninth Circuit held in *Waters* that the district judge abused its discretion by admitting a folder of "anarchist literature" without first reviewing the articles in it. The court explicitly stated it did "not hold that the articles were necessarily inadmissible for any purpose"; rather, it held that "the district court had the responsibility to read every page of the articles in order properly to understand their contents before ruling on their admissibility." 627 F.3d at 355, 357. In *Geise*, the Ninth Circuit ruled that a political book was admissible for the purpose of showing the relationship among co-conspirators. These cases stand for the proposition that a court must closely examine any literature evidence for relevance, and for potential undue prejudice, before determining admissibility.

Evidence of the type seized at Defendants' homes is regularly deemed admissible to prove conspiracy, knowledge, and intent. In *United States v. Anderson*, 353 F.3d 490, 504 (6th Cir. 2003), portions of anti-government books and pamphlets found in the defendant's home were held admissible to prove conspiracy, knowledge,

and intent.  In *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) the Second Circuit held that certain terrorist books, manuals, and other documents were admissible to prove conspiracy, motive and intent.  The Court stated: "The materials that were admitted established the existence of the conspiracy to bomb American targets and demonstrated the defendants' intent and motivation to use violence to protest American foreign policy in the Middle East." *Id.*  Similar documents may also be admitted to rebuff a defendant's claims that he was engaging in mere puffery.  *See United States v. Parr*, 545 F.3d 491, 502 (7th Cir. 2008) (sections of *Anarchist Cookbook* referring to homemade explosives admissible to rebuff claims by defendant that he was engaging in mere puffery).

Defendants are charged with seditious conspiracy, and conspiracy to use weapons of mass destruction.  The Government must prove that each defendant knowingly and voluntarily joined each conspiracy, knowing of its main purpose and intending to further its goals.  Anti-government and other militia literature that demonstrates knowledge and intent is relevant.  Defendants have also indicated that their defense may include a claim that they were engaging in mere puffery.  Certain anti-government or militia documents may be relevant to rebut this claim.

While the case law holds that evidence similar to the seized literature is normally admissible in cases such as this, the Court is not empowered to admit it in bulk, without examining each item carefully.  Once the court determines that a piece of evidence is relevant, and that it is offered for a permissible, non-hearsay purpose, the Court must still find that its probative value is not outweighed by the risk of undue prejudice.  *See Salameh*, 152 F.3d at 111 (noting with approval that the district judge made a

"conscientious assessment," "scrupulously reviewed each item," and "excluded a number of the materials seized . . . as unduly prejudicial.").

Defendants do not specifically object to any item of seized literature, despite the fact that all of it has been available for inspection for months. On the other hand, the Government's proposed exhibit list, submitted on January 17, 2012, is entirely too generic. Without specifics, the Court cannot now rule. Many of the listed titles provide no indication of the item's content (e.g., "Militia Field Manual," "Publication - Freedom Voice," "Book - Prince of Darkness - Anti-Christ and the New World Order"). The Court will not entertain admission of these or other items without a much more detailed description. Nor will the Court entertain admission of entire books or manuals, though it will consider admission of relevant passages that have been copied or removed. *See Parr*, 545 F.3d at 502 (admission of entire *Anarchist's Cookbook* was abuse of discretion, though relevant portions could come in).

Since Defendants did not submit specific objections, and the Court cannot rule in a vacuum, this motion is denied without prejudice. The Government must amend its proposed exhibit list by providing more detailed descriptions, citing to specific pages or passages in books and manuals, and to specific segments of videos, etc., so that the Defendants can make an initial determination of admissibility in light of this opinion, and renew the motion if necessary.

The Court believes the following exhibits from the Government's proposed exhibit list are encompassed by this motion and require a more detailed description: 118, 120, 123, 124, 125, 148, 150, 292, 310, 314, 425, 426, 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 451, 452, 453, 455, 582, 583, 585, 588,

590, 596, 597, 598, 599, 612, 614, 616, 617, 618, 620, 621, 622, 647.

**B.     Government Experiments and Re-enactments**

Defendants object to the admission of evidence or experiments, re-enactments, or demonstrations conducted by the Government. They say the Government has "not identified specifically how these matters were conducted, under what circumstances they transpired, or how the same are relevant . . . ." The Government responds that Defendants have all of the reports describing how the demonstrations were carried out, yet they again fail to lodge any specific objections. The Government says it fully intends to lay the necessary foundation at trial that the tests were based off of actual bombs possessed by the Hutaree, or were built from plans provided by the Hutaree to the undercover agent. Lastly, the Government says that the experiment evidence is highly relevant and probative, given that Defendants are charged with conspiring to use weapons of mass destruction, including explosive bombs, explosive mines, and other similar devices.

Demonstrative evidence is admissible if it is relevant and probative. *United States v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005) ([E]xperimental evidence is admissible so long as the evidence is relevant and probative, and experimental evidence is deemed to have probative value if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation.") (internal quotation and citation omitted). The substantially similar standard is flexible; all variables do not need to be controlled. *United States v. Metzger*, 778 F.2d 1195, 1204 (holding that video of FBI re-enactment of explosion in car was properly admitted despite the fact that not every variable was identical). Evidence that is probative of an

element of the offense should be admitted in all but the most egregious cases. *United States v. Smith*, 502 F.3d 680, 687 (7th Cir. 2007) (district court properly allowed expert to demonstrate use of a pipe bomb because "it was necessary to help the government meet is burden to prove that [the defendant] attempted to use a bomb with intent to cause harm.").

Defendants do not take issue with the above standard, but argue that the Government should be required to demonstrate compliance outside the presence of the jury. The Court does not agree. Defendants have access to the reports of the experiments but do not specifically object to any aspects. The Court cannot rule without specific objections. Additionally, because this type of evidence is routinely admitted, the Court does not believe Defendants would be prejudiced by having the Government lay the proper foundation for admission at trial.

## IV.    CONCLUSION

Defendants' motion for an evidentiary hearing on the admissibility of experimental evidence is **DENIED**. Defendants' motion for an evidentiary hearing on the admission of seized literature is **DENIED** without prejudice. The Government must amend its proposed exhibit list regarding the literature evidence by naming particular pages in books, magazines, novels, and manuals it intends to introduce into evidence, and by providing a detailed description of the particular passages or pages. The Government must also identify and describe in detail particular segments of videos it intends to introduce. The Government must do this by 5:00 p.m. on January 24, 2012. If Defendants continue to object to any item, they must do so in writing by 10 a.m. on January 30, 2012, in a renewed motion, pointing to specific exhibits and explaining the

basis for any objection.  The Court may hold an evidentiary hearing on January 31, 2012  if necessary.

      **IT IS ORDERED.**

                                                             /s/ Victoria A. Roberts
                                                             Victoria A. Roberts
                                                             United States District Judge

Dated:  January 19, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 19, 2012.

S/Linda Vertriest
Deputy Clerk

---