UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    CASE NUMBER: 10-20123
                                               HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, et al.,

        Defendant.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR *BRANDENBURG* JURY INSTRUCTION**

**I.    INTRODUCTION**

This matter is before the Court on Defendant David Stone, Jr.'s Motion to Instruct the Jury re: the *Brandenburg*/Imminence Standard Pursuant to First Amendment (Doc. 523). Several Defendants join in the motion.

Defendants' motion is **DENIED**.

**II.    BACKGROUND**

Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2) Conspiracy to use Weapons of Mass Destruction (18 U.S.C. §2332a(a)(2)); (3) Use and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)); (4) Possessing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §924(c)(1)). Defendants David Stone, David Stone, Jr., and Joshua Stone are charged with various other weapons-related offenses.

In his Report and Recommendation (R&R) on Defendants' Motion to Dismiss the

Indictment (Doc. 269), Magistrate Judge Komives adequately summarized the allegations regarding the Seditious Conspiracy charge set forth in Count One of the First Superceding Indictment. He wrote:

> In this count, the government charges that defendants "knowingly conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury, to oppose by force the authority of the Government of the United States, and to prevent, hinder, and delay by force the execution of United States law, including federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices." 1st Superceding Indictment, Count One, ¶ 2 [hereinafter "Indictment"]. The Indictment then alleges the means and methods used by defendants to further the objects of the conspiracy. Specifically, the Indictment alleges that "[t]he HUTAREE's general plan was to commit some violent act to draw the attention of law enforcement or government officials, in order to prompt a response by law enforcement," such as by killing a law enforcement officer. *Id.*, ¶ 3. The Indictment further alleges that once such a law enforcement response had been provoked, "HUTAREE members would retreat to one of several 'rally points' where the HUTAREE would conduct operations against the government and be prepared to defend in depth with trip-wired and command detonated anti-personnel IEDs [(improvised explosive devices)], ambushes, and prepared fighting positions." *Id.*, ¶ 4. Such a confrontation, the Hutaree believed, "would be a catalyst for a more widespread uprising against the United States Government." *Id.* The Indictment alleges that the "conspirators planned and trained for armed conflict against

local, state, and federal law enforcement" through numerous means, including acquiring weapons, engaging in military-style training, planning the execution of a law enforcement officer, obtaining information about and materials for the construction of IEDs, engaging in reconnaissance exercises and planning for the killing of anyone who happened upon their exercises, and attempting to initiate a Hutaree protocol to engage law enforcement in an armed conflict following the arrest of several Hutaree members. *Id.*, ¶ 5. The weapons of mass destruction, explosive device, and § 924(c)(1) charges alleged in Counts Two through Seven are derivative of the seditious conspiracy count alleged in Count One. R&R at 2-3.

The Government filed a Second Superceding Indictment (Doc. 293) shortly after Magistrate Komives issued his R&R. The Second Superceding Indictment did not change the substantive counts of the First Superceding Indictment; it only added a criminal forfeiture count. Magistrate Komives' summary still applies.

### III. LAW AND ANALYSIS

Defendants say that they are entitled to have the jury instructed regarding the First Amendment right of freedom of expression and association, as well as the *Brandenburg* standard, "that the expression was protected unless both the intent of the speaker and the tendency of his words was to produce or incite an imminent lawless act." *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969). Defendants say that they engaged in protected advocacy, and although the Government ultimately chose to charge them with seditious conspiracy, the Federal Bureau of Investigation (FBI) investigated the Hutaree Militia for

"advocating the overthrow of the United States" pursuant to 18 U.S.C. § 2384. Defendants further say that a primary issue at trial will be whether their statements amount to mere advocacy and/or hyperbole, or whether they are proof of a conspiracy to use force against the United States. Because Defendants intend to use the First Amendment as a defense at trial, they argue that they are entitled to a jury instruction on the First Amendment. *See Matthews v. United States*, 485 U.S. 58, 63 (1988) ("[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

The Government says that Defendants are wrongly trying to frame the issues in terms of the First Amendment, when in reality the Second Superceding Indictment charges conspiracy to commit violent crimes, not crimes of advocacy or solicitation. The Government says that, to the extent it intends to use Defendants' words as evidence, the words are "brigaded with action" and go well beyond mere advocacy. Because the charges here involve conspiracy to commit illegal acts–and not mere counseling or solicitation–the Government argues that this case is distinguishable from *Brandenburg* and all other cases cited by Defendants. Lastly, the Government argues that instructing the jury on the First Amendment would introduce a duplicitous issue that would confuse the jury.

The Court agrees with the Government; *Brandenburg* and its progeny are inapplicable where the charge is conspiracy to commit unlawful acts, and not solicitation or advocacy. Courts have found this distinction dispositive.

In *Brandenburg*, the Supreme Court held that an Ohio criminal syndicalism

statute violated the First Amendment because it punished mere advocacy. The statute stated that it was unlawful to "advocat[e] . . . the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform." *Brandenburg*, 395 U.S. at 444-45. In *Brandenburg*, a leader of the Ku Klux Klan was convicted under the statute for speaking of the possibility of taking revenge some indefinite time in the future against blacks and Jews. The Supreme Court overturned the conviction and held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. This distinction between mere advocacy and incitement of imminent unlawful actions dictates whether speech may constitutionally be punished under the criminal laws. *See also Freeman*, 761 F.2d at 552 ("[E]xpression [is] protected unless both the intent of the speaker and the tendency of his words [is] to produce or incite an imminent lawless act.")

*Brandenburg* stands for the proposition that speech alone which amounts only to advocacy is protected by the First Amendment. As Magistrate Komives explained in his R&R: "the point of *Brandenburg* is that the government may not constitutionally proscribe mere advocacy without a showing of imminence, but *Brandenburg* says nothing about speech which goes beyond mere advocacy and constitutes an actual conspiracy to use force." R&R at 14.

*Brandenburg* is inapplicable to charges, like the ones here, of actual conspiracy to commit unlawful acts. In *Rahman v. United States*, 189 F.3d 88 (2d Cir. 1999), ten

defendants were convicted of seditious conspiracy for their roles in plots to bomb various bridges, tunnels, and buildings in New York City. Defendants challenged their convictions on the ground that the seditious conspiracy statute, 18 U.S.C. § 2384, is an unconstitutional burden on free speech. The Second Circuit disagreed, noting that the seditious conspiracy statute proscribes speech only when it constitutes an agreement to use force against the United States. *Id.* at 114. The Court explained: "It remains fundamental that while the state may not criminalize the expression of views–even including the view that violent overthrow of the government is desirable–it may nonetheless outlaw encouragement, inducement, or conspiracy to take violent action." *Id.* The Court then distinguished the seditious conspiracy statute from the syndicalism statute held unconstitutional in *Brandenburg*, stating, "To be convicted under Section 2384, one must conspire to *use* force, not just to *advocate* the use of force." *Id.* The Court examined recent First Amendment decisions and noted "that a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual use of force, which are not." *Id.*

The allegations in the Second Superceding Indictment go well beyond mere advocacy, and include the threatened or actual use of force. As the Court noted in its Order Adopting Magistrate Komives' R&R,

> the Indictment specifically charges that Defendants conspired to oppose by force the United States Government by killing a member of law enforcement and attacking the funeral procession motorcade (Doc. # 293 at 6); conducting operations against the government (*id.* at 7); engaging in military-style training (*id.*); obtaining information about IEDs and EFPs (*id.* at 8); and killing civilians

who "happened upon" their training exercise and did not acquiesce to their demands. (*Id.* at 8). These alleged acts go beyond mere expression or advocacy. (Doc. 297 at 9).

If the allegations in the indictment are true, Defendants' words are clearly brigaded with action. That otherwise protected speech may play a part in the commission of a crime does not insulate that crime from prosecution. *See United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) ("'[W]hen speech and nonspeech elements are combined in the same course of conduct, a sufficient important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.'") (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

The *Brandenburg* requirement that speech may not be prosecuted unless it incites imminent unlawful action is inapplicable; where the charge is conspiracy, it is the agreement that is made criminal, not the speech itself. *United States ex. rel Epton v. Nenna*, 446 F.2d 363, 368 (2d Cir. 1971); *United States v. Rahman*, 1993 WL 410449 at *6 (S.D.N.Y. Oct. 13, 1993) (explaining that under the seditious conspiracy statute, "it is not advocacy that is sought to be punished here; it is the use of force."). Therefore, instructing the jury on the Brandenburg imminence requirement would introduce an extraneous and unnecessary issue. There is no imminency requirement where the charge is conspiracy to commit violent acts.

The cases cited by Defendants deal with advocacy or the counseling of unlawful acts. They are all distinguishable from the allegations here, which charge conspiracy to commit violent acts. As the cases relied upon by the Court demonstrate, the *Brandenburg* imminence standard simply does not apply to charges of conspiracy; to

instruct the jury on the standard would only confuse the issues.

The Court, however, reserves the right to reconsider at the close of proofs whether a First Amendment/*Brandenburg* jury instruction is appropriate. If the full factual record indicates that the Government failed to prove the conspiracy charges with evidence other than Defendants' words, and if there is "some evidence . . . that the purpose of the speaker or the tendency of his words are directed to ideas or consequences remote from the commission of the criminal act," *see Freeman*, 761 F.2d at 551, then Defendants' are entitled to have the jury instructed pursuant to *Brandenburg*. Even the Government admits that a *Brandenburg* instruction may be appropriate under these circumstances. Gov't's Resp. Br. at 5-6 ("At most this court should consider, at the conclusion of trial . . .whether there is any colorable basis for the defendants to claim that their actions amounted simply to abstract discussion and advocacy. If so, the court may consider whether a *Brandenburg* imminence instruction should be given."). The Court previously recognized this possibility in its Order Adopting Magistrate Komives' R&R, stating, "To the extent the Government attempts to prove the charges against Defendants with evidence of their advocacy, views, or beliefs, the Court can safeguard their First Amendment rights by instructing the jury that it may not convict Defendants because they may hold unpopular beliefs." (Doc. 297 at 9).

If, however, the Government shows that Defendants' words were brigaded with action–as the Second Superceding Indictment alleges–a First Amendment and *Brandenburg* jury instruction is not merely unnecessary, it is also inappropriate. It would serve only to introduce a duplicitous issue and confuse the jury. *See Rowlee*, 899 F.2d at 1280.

## IV. CONCLUSION

Defendants' motion to instruct the jury on the First Amendment and the *Brandenburg* imminence standard is **DENIED**. The Court reserves the right to revisit this ruling at trial if the Government fails to prove the conspiracy charges by evidence other than Defendants' words, and if there is some evidence that the Defendants' purpose or the likely effect of the words was remote from the criminal act.

                                             /s/ Victoria A. Roberts
                                             Victoria A. Roberts
                                             United States District Judge

Dated: January 23, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 23, 2012.

S/Linda Vertriest
Deputy Clerk

---