UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CASE NUMBER: 10-20123
                                   HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, et al.,

        Defendant.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR APPLICATION OF THE *STRICTISSIMI JURIS* STANDARD

**I.    INTRODUCTION**

This matter is before the Court on Defendant David Brian Stone, Jr.'s Motion in Limine Requesting Application of the Strictissimi Juris Standard to Protect the Accused's Rights to Freedom of Association, Assembly, and Due Process (Doc. 522). All Defendants join in the motion.

Defendants' motion is **DENIED**.

**II.    BACKGROUND**

Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2) Conspiracy to use Weapons of Mass Destruction (18 U.S.C. §2332a(a)(2)); (3) Use and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)); (4) Possessing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §924(c)(1)). Defendants David Stone, David Stone, Jr., and Joshua Stone are charged with various other weapons-related offenses.

In his Report and Recommendation (R&R) on Defendants' Motion to Dismiss the Indictment (Doc. 269), Magistrate Judge Komives adequately summarized the allegations regarding the Seditious Conspiracy charge set forth in Count One of the First Superceding Indictment. He wrote:

> In this count, the government charges that defendants "knowingly conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury, to oppose by force the authority of the Government of the United States, and to prevent, hinder, and delay by force the execution of United States law, including federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices." 1st Superceding Indictment, Count One, ¶ 2 [hereinafter "Indictment"]. The Indictment then alleges the means and methods used by defendants to further the objects of the conspiracy. Specifically, the Indictment alleges that "[t]he HUTAREE's general plan was to commit some violent act to draw the attention of law enforcement or government officials, in order to prompt a response by law enforcement," such as by killing a law enforcement officer. *Id.*, ¶ 3. The Indictment further alleges that once such a law enforcement response had been provoked, "HUTAREE members would retreat to one of several 'rally points' where the HUTAREE would conduct operations against the government and be prepared to defend in depth with trip-wired and command detonated anti-personnel IEDs [(improvised explosive devices)], ambushes, and prepared fighting positions." *Id.*, ¶ 4. Such a confrontation, the Hutaree believed, "would be a catalyst for a more widespread uprising against the United States Government." *Id.* The Indictment

alleges that the "conspirators planned and trained for armed conflict against local, state, and federal law enforcement" through numerous means, including acquiring weapons, engaging in military-style training, planning the execution of a law enforcement officer, obtaining information about and materials for the construction of IEDs, engaging in reconnaissance exercises and planning for the killing of anyone who happened upon their exercises, and attempting to initiate a Hutaree protocol to engage law enforcement in an armed conflict following the arrest of several Hutaree members. *Id.*, ¶ 5. The weapons of mass destruction, explosive device, and § 924(c)(1) charges alleged in Counts Two through Seven are derivative of the seditious conspiracy count alleged in Count One. R&R at 2-3.

The Government filed a Second Superceding Indictment (Doc. 293) shortly after Magistrate Komives issued his R&R. The Second Superceding Indictment did not change the substantive counts of the First Superceding Indictment; it only added a criminal forfeiture count. Magistrate Komives' summary still applies.

### III. ARGUMENT OF THE PARTIES

Defendants say the Hutaree Militia is a bifarious organization–one with both legal and allegedly illegal aims–so the Court must apply a special evidentiary standard, *strictissimi juris*, to protect their First Amendment right to freedom of association. Defendants say application of *strictissimi juris* would protect the rights of individuals who engaged only in lawful advocacy rather than conspiracy to commit violent acts. In particular, Defendant Stone Jr. says that he did not make any anti-government or anti-law enforcement statements on any of the hundred-plus hours of recordings. He says

that *strictissimi juris* must be applied to avoid his conviction based on association alone. Defendants say that in applying *strictissimi juris*, the ordinary evidentiary rules of conspiracy do not apply. If strictissimi juris applies, the Government must use only each Defendant's personal statements and/or actions to prove his specific intent. This means that statements of a co-conspirator are inadmissible against other individual Defendants to prove their intent. Defendants say this strict standard is necessary to avoid punishment for mere assembly or association with the legal activities of the Hutaree. Defendants also say they are entitled to an instruction to the jury on the *strictissimi juris* standard and their duty not to convict by association.

The Government says that *strictissimi juris* does not apply because the indictment charges conspiracy to oppose by force the government of the United States and conspiracy to use weapons of mass destruction. The indictment does not charge membership crimes, advocacy, or solicitation; in short, the Government says that the charges are not within the purview of the First Amendment, so *strictissimi juris* is inapplicable. Lastly, the Government says that even if the Court finds that *strictissimi juris* applies, it does not support the relief Defendants request. The Government says the doctrine contemplates an elevated standard for sufficiency of the evidence, but has no effect on the admissibility of evidence under the Federal Rules of Evidence. The Government says the doctrine does not affect the consideration of circumstantial evidence or co-conspirator statements, and it should not be the subject of a special jury instruction.

**IV. ANALYSIS**

The doctrine of *strictissimi juris* arose out of two prosecutions in the 1960s for

membership in the Communist Party in violation of the Smith Act, 18 U.S.C. § 2385. *United States v. Scales*, 367 U.S. 203 (1961); *United States v. Noto*, 367 U.S. 290 (1961). The Smith Act made it a felony to hold membership in any organization which advocated the overthrow of the government of the United States by force or violence. In describing the problem of prosecuting individuals for membership in a bifarious organization, the Supreme Court stated that "a [ . . . ] blanket prohibition of association with a group having both legal and illegal aims" would lead to "a real danger that legitimate political expression or association would be impaired . . . ." *Scales*, 367 U.S. at 229. Therefore, to convict a defendant for a membership crime, "there must be clear proof that a defendant 'specifically intend(s) to accomplish (the aims of the organization) by resort to violence.'" *Id.* (quoting *Noto*, 367 U.S. at 299). The *Noto* Court elaborated, that to avoid the problem of guilt by association, "it is upon the particular evidence in a particular record that a particular defendant must be judged . . . ." 367 U.S. at 299. The Court further stated that the element of requisite criminal intent, in a membership crime, "must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes . . . ." *Id.* at 299-300.

Since *Scales* and *Noto*, it appears *strictissimi juris* has been applied only in extraordinary circumstances. The Court is aware of only one case where the applicability of *strictissimi juris* to a charge of seditious conspiracy was discussed. *United States v. Rodriguez*, 803 F.2d 318 (7th Cir. 1986). In *Rodriguez*, defendant was a member of an organization called FALN, which the court described as "an armed

clandestine terrorist organization seeking independence for Puerto Rico." *Id.* at 319. Defendant was convicted of seditious conspiracy, along with other FALN members, for planning to bomb a marine training center and an army reserve training center. His intended role was to drive his co-conspirators to the bombing sites. Defendant objected to the standard conspiracy instructions given to the jury at trial and argued on appeal that *strictissimi juris* governed his conduct. The Seventh Circuit disagreed:

> In urging the application of a special standard of proof, [defendant] ignores the charges and evidence against him. The evidence shows that [he] knowingly and intentionally became a member of the conspiracy. The defendants were charged with agreeing to use force, not 'advocating' force which renders the Smith Act cases relied upon by the defendant irrelevant. The jury was properly instructed and reasonably concluded that [defendant] was a member of the FALN Lunt Avenue cell. *Id.* at 322.

Unlike in the cases cited by Defendants, the conspiratorial agreement charge here is not aimed at conduct involving speech. The indictment alleges, in support of the seditious conspiracy charge, that Defendants conspired to kill a member of law enforcement and attack the funeral procession; to conduct operations against the government; to conduct military-style training; to obtain information about IEDs and EFPs; and to kill civilians who happened upon their training exercises. Second Superceding Indictment, Count I. These allegations are not "in the shadow of the First Amendment."

Compare the charges here with those in the cases relied upon by Defendants: *Scales and Nota* involve criminal charges for membership in the Community Party, a crime that clearly implicates the right to freedom of association; *United States v. Dellinger*, 472 F.2d 340, 359 (7th Cir. 1972), the famed "Chicago Seven" case, involved prosecution of anti-war protestors "based wholly on the making of speeches" which led

to violence at the 1968 Democratic National Convention; *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969), involved prosecution of anti-war protestors based on their drafting and distribution of a document entitled "A Call to Resist Illegitimate Authority"; *United States v. Fullmer*, 584 F.3d 132 (3rd Cir. 2009) involved prosecution of animal rights activists for their role in operating a website that posted the personal information of individuals who worked for organizations believed to be associated with animal testing so that other activists could take unlawful "direct action" against these individuals. The doctrine of *strictissimi juris* has been applied very rarely since its formulation. As these cases illustrate, it only comes into play for crimes that obviously implicate the First Amendment. The seditious conspiracy and conspiracy to use weapons of mass destruction charges do not fall into this category.

Many cases hold that *strictissimi juris* does not apply to crimes involving a bifarious organization if the nature of the conspiracy charged involves both illegal ends and illegal means. *See United States v. Montour*, 944 F.2d 1019, 1024 (2d Cir. 1991) ("[I]t is clear that *strictissimi juris* does not apply . . . [B]oth the alleged ends of the group (forcibly impeding the service of federal search warrants) and the alleged means chosen to achieve that end (setting up roadblocks on the reservation) were illegal); *United States v. Markiewicz*, 978 F.2d 786 (2d Cir. 1992) (in prosecution under federal anti-riot act, where defendants claimed their conduct involved political action to maintain tribal sovereignty, *strictissimi juris* did not apply because the end goals (committing violence against those who disagreed with defendants) and means (public disturbances) were both illegal).

The Hutaree as an organization may have legal ends, such as advocating for

Second Amendment rights; however, unlike the defendants in *Scales* and *Noto*, Defendants are not charged with a membership crime. They are not charged with being members of the Hutaree Militia, but for seditious conspiracy and conspiracy to use weapons of mass destruction. The nature of the conspiracies charged involve illegal ends and illegal means. The seditious conspiracy charge has as its end, the overthrow of the United States government by means of acts of violence. The obtainment and use of weapons of mass destruction is also illegal. This case, therefore, is far removed from the First Amendment concerns of *Scales* and *Noto*. *See United States v. Cerilli*, 603 F.2d 415, 422 (3rd Cir. 1979) ("Appellants have not been indicted for membership in a political party . . . They have been indicted for extortion. We are satisfied that the traditional standards of proof and of judicial review are fully adequate to protect appellants' rights without application of the doctrine of strictissimi juris.").

Even if the Court were to apply the *strictissimi juris* standard, the limited case law offers slight guidance on how the standard works in practice. One things is clear, though, from this Court's review of the case law: no court has held that application of the *strictissimi juris* standard affects the standard rules for admissibility of evidence. Rather, *strictissimi juris* affects the sufficiency of the evidence to convict. It imposes a duty on the Court, in the case of defendants accused of membership in an organization with both lawful and unlawful aims, to consider evidence against each defendant "according to the strictest law" so as to avoid conviction of members who used the organization for legitimate purposes. *See Claiborne Hardware*, 458 U.S. at 920. The doctrine dictates that Courts take care to protect a defendant's First Amendment right to freedom of association.

Courts have not agreed upon a specific test for examining the sufficiency of the evidence *strictissimi juris*. The cases simply say that the court must satisfy itself that each defendant has the requisite specific intent to accomplish the illegal goals of the organization. *Scales*, 367 U.S. at 229-30; *Noto*, 367 U.S. at 299-300. The Second Circuit added that, under *strictissimus juris*, the court may not impute the illegal intent of alleged co-conspirators to the actions of the defendant. *Montour*, 944 F.2d at 1024.

It appears only one court has articulated a specific test for sufficiency of the evidence under the *strictissimi juris* standard, the First Circuit:

> When the alleged agreement is both bifarious and political within the shadow of the First Amendment, we hold that an individual's specific intent to adhere to the illegal portions may be shown in one of three ways: by the individual defendant's prior or subsequent unambiguous statements; by the individual defendant's subsequent commission of the very illegal act contemplated by the agreement; or by the individual defendant's subsequent legal act if that act is clearly undertaken for the specific purpose of rendering effective the later illegal activity which is advocated. *Spock*, 416 F.2d at 173 (internal citation omitted).

But, as the Government points out, other circuits have apparently not followed the *Spock* test. *See United States v. McKee*, 506 F.3d 225, 238-41 (court held that *strictissimi juris* applied to charges of conspiracy to defraud the United State against member of a religious sect that opposed payment of taxes, but then held circumstantial evidence and inferences from the acts and statements of co-conspirators was sufficient to support conviction); *United States v. Fullmer*, 584 F.3d 132, 160-61 (in conspiracy prosecution against radical environmental activists, court held *strictissimi juris* applied but then held circumstantial evidence alone was sufficient to meet the standard).

The Sixth Circuit does not appear to have addressed application of *strictissimi juris*. But, because the Court believes that Defendants' rights will be adequately

Page 9 of 10

protected under the normal standards for sufficiency of the evidence, the Court need not address further the contours of the doctrine as applied.

## V. CONCLUSION

Defendants' motion for application of the *strictissimus juris* standard and an instruction to the jury on *strictissimus juris* is **DENIED**.

**IT IS ORDERED.**

s/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: January 25, 2012

---
The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 25, 2012.

s/Linda Vertriest
Deputy Clerk

---