United States District Court
Eastern District of Michigan

| | |
|---|---|
| United States of America, | Criminal No. 10-20123 |
| Plaintiff, | Honorable Victoria A. Roberts |
| vs. | |

D-l    David Brian Stone,
D-2    David Brian Stone, Jr.,
D-3    Joshua Matthew Stone,
D-4    Tina Mae Stone,
D-6    Michael David Meeks,
D-7    Thomas William Piatek, and
D-8    Kristopher T. Sickles,

Defendants.

---

# Government's Trial Brief

---

The United States hereby submits the government's trial brief.  This memorandum is intended to provide a legal synopsis regarding certain legal and evidentiary issues the government anticipates may arise at trial.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

*s/ Sheldon N. Light*
SHELDON N. LIGHT (P28798)
CHRISTOPHER GRAVELINE (P69515)
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9732
sheldon.light@usdoj.gov
christopher.graveline2@usdoj.gov

Dated:  February 10, 2012

## Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.     Charges and Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    Conspiracy Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

III.   Evidentiary Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

       A.    Statements of Co-conspirators as Verbal Acts. . . . . . . . . . . . . . . . . . .  8

       B.    Co-conspirators' Extra-judicial Statements. . . . . . . . . . . . . . . . .  10

       C.    Admission of a Statement of a Defendant. . . . . . . . . . . . . . . . . .  13

       E.    Prior Consistent Statements. . . . . . . . . . . . . . . . . . . . . . . . . . .  15

       F.    Background Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

       G.    Impeachment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

       H.    Anticipated Impeachment. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

       I.    Refreshing Recollection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

       J.    Admission of Tape-recorded Conversations. . . . . . . . . . . . . . . . . .  24

       K.    Admission of Photocopies. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

## Table of Authorities

Cases                                                                                        Page(s)

*Anderson v. United States*, 417 U.S. 211 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Blumenthal v. United States*, 332 U.S. 539 (1947). . . . . . . . . . . . . . . . . . . . . . . . 6

*Bourjaily v. United States*, 483 U.S. 171 (1987). . . . . . . . . . . . . . . . . . . . . . 11, 13

*Braverman v. United States*, 317 U.S. 49 (1942). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Direct Sales Co. v. United States*, 319 U.S. 703 (1943). . . . . . . . . . . . . . . . . . . . 7

*Fanelli v. United States Gypsum Co.*, 141 F.2d 216 (2d Cir. 1944). . . . . . . . . . . . . . 24

*Hoffa v. United States*, 385 U.S. 293 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Iannelli v. United States*, 420 U.S. 770 (1975),
   *overruled on other grounds by Brown v. Ohio*, 432 U.S. 161 (1977). . . . . . . . . 7

*Katz v. United States*, 389 U.S. 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Krulewitch v. United States*, 336 U.S. 440 (1949). . . . . . . . . . . . . . . . . . . . . . . 10

*Lopez v. United States*, 373 U.S. 427 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pereira v. United States*, 347 U.S. 1 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pettibone v. United States*, 148 U.S. 197 (1893). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pinkerton v. United States*, 328 U.S 640 (1946). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Poliafico v. United States*, 237 F.2d 97 (6th Cir. 1956). . . . . . . . . . . . . . . . . . 4, 6, 7

*Salinas v. United States*, 522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Adamo*, 742 F.26 927 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . 23

*United States v. Aguwa*, 123 F.3d 418 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 17

*United States v. Andersson*, 813 F.2d 1450 (9th Cir. 1987). . . . . . . . . . . . . . . . . . 12

*United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944). . . . . . . . . . . . . . . . . . . 7

*United States v. Aponte-Suarez*, 905 F.2d 483 (1st Cir. 1990). . . . . . . . . . . . . . . . 9

*United States v. Arboleda*, 929 F.2d 858 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . . 7

*United States v. Archbold-Newball*, 554 F.2d 665 (5th Cir. 1977) . . . . . . . . . . . . . . 14

*United States v. Ascarrunz*, 838 F.2d 759 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . 12

| Cases | Page(s) |
|---|---|
| *United States v. Axselle*, 604 F.2d 1330 (10th Cir. 1979). | 26 |
| *United States v. Baron*, 602 F.2d 1248 (7th Cir. 1979). | 16 |
| *United States v. Bostic*, 480 F.2d 965 (6th Cir. 1973). | 4 |
| *United States v. Bradley*, 421 F.2d 924 (6th Cir. 1970). | 4 |
| *United States v. Brashier,* 548 F.2d 1315 (9th Cir. 1976). | 22 |
| *United States v. Canieso*, 470 F.2d 1224 (2d Cir. 1972). | 15 |
| *United States v. Christian*, 786 F.2d 203 (6th Cir. 1986). | 7 |
| *United States v. Clark*, 732 F.2d 1536 (11th Cir. 1984). | 6 |
| *United States v. Collier*, 527 F.3d 695 (8th Cir. 2008). | 22 |
| *United States v. Conley*, 503 F.2d 520 (8th Cir. 1974). | 23 |
| *United States v. Cortellesso*, 663 F.2d 361 (1st Cir. 1981). | 25 |
| *United States v. Daily*, 921 F.2d 994 (10th Cir. 1990). | 7 |
| *United States v. DeCorte*, 851 F.2d 948 (7th Cir. 1988). | 4 |
| *United States v. Denton*, 556 F.2d 811 (6th Cir. 1977). | 26 |
| *United States v. Duff*, 332 F.2d 702 (6th Cir. 1964). | 4, 5 |
| *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). | 11, 13 |
| *United States v. Estrada*, 430 F.3d 606 (2d Cir. 2005). | 21, 22 |
| *United States v. Etheridge*, 424 F.2d 951 (6th Cir. 1970). | 10 |
| *United States v. Evans*, 572 F.2d 455 (5th Cir. 1978). | 14 |
| *United States v. Flores-de-Jesus*, 569 F.3d 8 (5th Cir. 2009). | 17 |
| *United States v. Freeman*, 816 F.2d 558 (10th Cir. 1987). | 18 |
| *United States v. Frost*, 914 F.2d 756 (6th Cir. 1990). | 21 |
| *United States v. Gaertner*, 705 F.2d 210 (7th Cir. 1983). | 14 |
| *United States v. Gibbs*, 739 F.2d 838 (3d Cir. 1984). | 11 |
| *United States v. Girdner,* 773 F.2d 257 (10th Cir. 1985). | 19 |
| *United States v. Goble*, 512 F.2d 458 (6th Cir. 1975). | 7 |

| Cases | Page(s) |
|---|---|

*United States v. Goosby*, 523 F.3d 632 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gorel*, 622 F.2d 100 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Hamilton*, 689 F.2d 1262 (6th Cir. 1982). . . . . . . . . . . . . . . . . . . 16

*United States v. Harris*, 542 F.2d 1283 (7th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Hitow*, 889 F.2d 1573 (6th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hodges*, 935 F.2d 766 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Hoelscher*, 914 F.2d 1527 (8th Cir. 1990). . . . . . . . . . . . . . . 7, 11, 13

*United States v. Howell,* 285 F.3d 1263 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Hughes*, 891 F.2d 597 (6th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hughes*, 895 F.2d 1135 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hurst*, 951 F.2d 1490 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Inadi*, 475 U.S. 387 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Ivey*, 915 F.2d 380 (8th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Jackson*, 451 F.2d 259 (5th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Jankowski*, 713 F.2d 394 (8th Cir. 1983). . . . . . . . . . . . . . . . . . . . 25

*United States v. Jones*, 730 F.2d 593 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Jordan*, 810 F.2d 262 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Kelley*, 849 F.2d 999 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kissel*, 218 U.S. 601 (1910). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Klein*, 560 F.2d 1236 (5th Cir. 1977),
    *cert. denied*, 434 U.S. 1073 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Koenig*, 856 F.2d 843 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Lambinus,* 747 F.2d 592 (10th Cir. 1984). . . . . . . . . . . . . . . . . . . . 19

*United States v. Lashmett,* 965 F.2d 179 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lawson*, 872 F.2d 179 (6th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . 16

iv

| Cases | Page(s) |
|---|---|

*United States v. Lazcano*, 881 F.2d 402 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Lewis*, 759 F.2d 1316 (8th Cir. 1985). . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Lombardi*, 550 F.2d 827 (2d Cir. 1977). . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Lopez*, 584 F.2d 1175 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Love*, 767 F.2d 1052 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990). . . . . . . . . . . . 7, 12

*United States v. Maliszewski*, 161 F.3d 992 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . 6

*United States v. Manske,* 186 F.3d 770 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Marino*, 658 F.2d 1120 (6th Cir. 1981). . . . . . . . . . . . . . . . . . . . . 15

*United States v. Martin*, 897 F.2d 1368 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . 17

*United States v. Matlock*, 415 U.S. 164 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Mayes*, 512 F.2d 637 (6th Cir. 1975). . . . . . . . . . . . . . . . . . . . 4, 6, 8

*United States v. Mealy*, 851 F.2d 890 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Miller*, 664 F.2d 94 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Modena*, 302 F.3d 626 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 23

*United States v. Montague*, 958 F.2d 1094 (D.C. Cir. 1992). . . . . . . . . . . . . . . 16, 17

*United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Nicoll*, 664 F.2d 1308 (5th Cir. 1982),
    *overruled on other grounds by*
    *United States v. Henry*, 749 F.2d 203 (1984). . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Olivo,* 80 F.3d 1466 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . 21

*United States v. Ospina*, 739 F.2d 448 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Pearce*, 912 F.2d 159 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Pendas-Martinez*, 845 F.2d 938 (11th Cir. 1988). . . . . . . . . . . . . . 17

*United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . 27, 28

| Cases | Page(s) |
|---|---|

*United States v. Plotke*, 725 F.2d 1303 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Potts*, 840 F.2d 368 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Poulos*, 895 F.2d 1113 (6th Cir. 1990).. . . . . . . . . . . . . . . . . . . . 6

*United States v. Rabinowich*, 238 U.S. 78 (1915). . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Register*, 496 F.2d 1072 (5th Cir. 1974). . . . . . . . . . . . . . . . . . . . 11

*United States v. Reid,* 634 F.2d 469 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Riccardi*, 174 F.2d 883 (3rd Cir. 1949). . . . . . . . . . . . . . . . . . . . 24

*United States v. Rizzo*, 492 F.2d 443 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Santiago*, 837 F.2d 1545 (11th Cir. 1988).. . . . . . . . . . . . . . . . 11, 12

*United States v. Schwartzbaum*, 527 F.2d 249 (2d Cir. 1975). . . . . . . . . . . . . . . 23

*United States v. Seamster*, 568 F.2d 188 (10th Cir. 1978).. . . . . . . . . . . . . . . . . 22

*United States v. Shabani*, 513 U.S. 10 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Shoffner*, 826 F.2d 619 (7th Cir. 1987). . . . . . . . . . . . . . . . . . . . 12

*United States v. Simonelli,* 237 F.3d 19 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . . 19

*United States v. Slade*, 627 F.2d 293 (D.C. Cir. 1980).. . . . . . . . . . . . . . . . . . . . 25

*United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976). . . . . . . . . . . . . . . . . . . . . 22

*United States v. Sophie*, 900 F.2d 1064 (7th Cir. 1990).. . . . . . . . . . . . . . . . . . . . 7

*United States v. Sullivan*, 903 F.2d 1093 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . 7

*United States v. Thompson*, 533 F.2d 1006 (6th Cir. 1976). . . . . . . . . . . . . . . . . . 5

*United States v. Torres*, 503 F.2d 1120 (2d Cir. 1974).. . . . . . . . . . . . . . . . . . . . . 5

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948).. . . . . . . . . . . . . 10

*United States v. Van Daal Wyk*, 840 F.2d 494 (7th Cir. 1988). . . . . . . . . . . . . . . 12

*United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979). . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Watson*, 594 F.2d 1330 (10th Cir. 1979). . . . . . . . . . . . . . . . . . . 25

| Cases | Page(s) |
|---|---|
| *United States v. Whitaker*, 372 F.Supp. 154 (M.D. Pa.), *aff'd*, 503 F.2d 1400 (1975) | 26 |
| *United States v. White*, 401 U.S. 745 (1971) | 24 |
| *United States v. Whitfield*, 543 U.S. 209 (2005) | 5 |
| *United States v. Whitmore,* 384 F.3d 836 (D.C. Cir. 2004) | 20 |
| *United States v. Wilkerson*, 456 F.2d 57 (6th Cir. 1972) | 27 |
| *United States v. Williams*, 739 F.2d 297 (7th Cir. 1984) | 27, 28 |
| *United States v. Wilson*, 985 F.2d 348 (7th Cir. 1993) | 19 |
| *United States v. Yates*, 698 F.2d 828 (6th Cir. 1983) | 14 |
| *Woodring v. United States*, 376 F.2d 619 (10th Cir. 1967) | 5 |
| *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978) | 5 |

| Statutes | Page(s) |
|---|---|
| 18 U.S.C. § 1349 | 5 |
| 18 U.S.C. § 1951 | 5 |
| 18 U.S.C. § 1956(h) | 5 |
| 18 U.S.C. § 2332a | 1 |
| 18 U.S.C. § 2384 | 1 |
| 18 U.S.C. § 371 | 5 |
| 18 U.S.C. § 842(p)(2) | 2 |
| 18 U.S.C. § 921(a)(4) | 1 |
| 18 U.S.C. § 922(o) | 3 |
| 18 U.S.C. § 924(c)(1) | 2, 3 |
| 21 U.S.C. § 846 | 5 |
| 26 U.S.C. § 5845(a)(3) | 3 |
| 26 U.S.C. § 5861(d) | 3 |

| Rules | Page(s) |
|---|---|
| Fed. R. Evid. 1002 | 27 |
| Fed. R. Evid. 1003 | 27 |
| Fed. R. Evid. 1006 | 26 |
| Fed. R. Evid. 403 | 20-22 |
| Fed. R. Evid. 404 | 19 |
| Fed. R. Evid. 608(b) | 18-21 |
| Fed. R. Evid. 609 | 18, 21, 22 |
| Fed. R. Evid. 801 | 8, 11-15, 24 |
| Fed. R. Evid. 901 | 26 |

## I.      Charges and Statutes

1. Count One of the Second Superseding Indictment ("indictment") charges all defendants with seditious conspiracy in violation of 18 U.S.C. § 2384:

> If two or more persons in any State or Territory, or in any place subject to the jurisdiction of the United States, conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, they shall each be fined under this title or imprisoned not more than twenty years, or both.

2. Count Two charges all defendants with conspiracy to use weapons of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2):

> (a) Offense Against a National of the United States or Within the United States.— A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction—
>
> *     *     *
>
> (2) against any person or property within the United States, and
>> (A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense;
>> (B) such property is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce;
>> (C) any perpetrator travels in or causes another to travel in interstate or foreign commerce in furtherance of the offense; or
>> (D) the offense, or the results of the offense, affect interstate or foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce;
>
> *     *     *
>
> shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2332a(c)(2) defines a "weapon of mass destruction" in pertinent part as "any destructive device as defined in section 921 of this title." 18 U.S.C. § 921(a)(4) defines a "destructive device" as:

1

(A) any explosive, incendiary, or poison gas—
    (i) bomb,
    (ii) grenade,
    (iii) rocket having a propellant charge of more than four
    ounces,
    (iv) missile having an explosive or incendiary charge of
    more than one-quarter ounce,
    (v) mine, or
    (vi) device similar to any of the devices described in the
    preceding clauses; [or]

*   *   *

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

3. Count Three charges two defendants with teaching and demonstrating the use of explosives, destructive devices, and weapons of mass destruction, in violation of 18 U.S.C. § 842(p)(2):

(2) Prohibition.— It shall be unlawful for any person—
(A) to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence; or
(B) to teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute to any person, by any means, information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, knowing that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence.

4. Counts Four and Five charge all defendants with using, carrying, and possessing firearms on August 22, 2009, during and in relation to, and in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(c)(1):

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking

2

crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

>> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

5. Counts Six and Seven charge all defendants except Tina Stone and Thomas Piatek with using, carrying, and possessing firearms on February 2, 2010, during and in relation to, and in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(c)(1).

6. Counts Eight through Twelve charge individual defendants (David Stone Sr., Joshua Stone, and Joshua Clough) with possession of machineguns in violation of 18 U.S.C. § 922(o):

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to—
>> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
>> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

7. Counts Thirteen and Fifteen charge defendants David Stone Sr. and Joshua Stone with possession of unregistered and unlawful short-barreled rifles, in violation of 26 U.S.C. § 5861(d):

> It shall be unlawful for any person—
>> \*   \*   \*
>> (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . .

For purposes of this statute, the term "firearm" has a specific definition, which is set forth in 26 U.S.C. § 5845(a)(3):

3

(a) Firearm

> The term "firearm" means
> \* \* \*
>> (3) a rifle having a barrel or barrels of less than 16 inches in length. . . .

## II.  Conspiracy Law

"A conspiracy is commonly defined as `a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.'"  *United States v. Koenig*, 856 F.2d 843, 854 (7th Cir. 1988) (quoting *United States v. DeCorte*, 851 F.2d 948, 953 (7th Cir. 1988)).  The Sixth Circuit has characterized a conspiracy as "a partnership in criminal purposes."  *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973).  *See also, Pinkerton v. United States*, 328 U.S 640, 644 (1946); *United States v. Kissel*, 218 U.S. 601, 608 (1910).  It is the common design, or the agreement, which is the essence of a conspiracy, *United States v. Mayes*, 512 F.2d 637, 652 (6th Cir. 1975); *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973), not the commission of the objective substantive crime. Once two or more persons have a mutual agreement to engage in criminal activity, and one or more overt acts are performed to implement the agreement, a criminal conspiracy has come into existence.  *United States v. Rabinowich*, 238 U.S. 78, 86, 88 (1915); *Poliafico v. United States*, 237 F.2d 97, 104 (6th Cir. 1956).  Such an understanding can be either explicit or implicit.  *United States v. Duff*, 332 F.2d 702, 705-6 (6th Cir. 1964).  Even where substantive offenses were committed in furtherance of the conspiracy, conspiring to commit a crime is an offense separate and distinct from the crime which may be the object of the conspiracy.  *Pereira v. United States*, 347 U.S. 1, 11 (1954); *United States v. Rabinowich*, 238 U.S. 78, 85 (1915); *United States v. Bradley*, 421 F.2d 924, 927 (6th Cir. 1970); *Pinkerton v. United States*, 328 U.S. 640, 643 (1946).

4

A conspiracy is a combination of persons who have an unlawful objective, or have a lawful objective which is to be accomplished by illegal means. *Pettibone v. United States*, 148 U.S. 197, 203 (1893); *United States v. Duff*, 332 F.2d 702, 705 (6th Cir. 1964). A conspiracy is punishable whether it succeeds or fails in its objective. *United States v. Rabinowich*, 238 U.S. 78, 86 (1915); *United States v. Torres*, 503 F.2d 1120, 1124 n. 2 (2d Cir. 1974).

As a general rule, the essential elements required to prove a conspiracy are as follows: (1) the conspiracy described in the indictment was fully formed and was existing at or about the time alleged; (2) the defendant wilfully became a member of the conspiracy; and (3) one of the conspirators thereafter knowingly committed at least one overt act in furtherance of an object of the conspiracy. *United States v. Thompson*, 533 F.2d 1006, 1009 (6th Cir. 1976). An overt act is an act in furtherance of the objective of the conspiracy, *Woodring v. United States*, 376 F.2d 619, 621 (10th Cir. 1967), and need not be an illegal act in and of itself, *Yates v. United States*, 354 U.S. 298, 334 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *Braverman v. United States*, 317 U.S. 49, 53 (1942).

An overt act is an essential element of the general federal conspiracy statute, 18 U.S.C. § 371. Other federal statutes, including the conspiracy statutes that are charged in this case, contain conspiracy provisions that do not require an overt act. *See, e.g., Salinas v. United States*, 522 U.S. 52 (1997) (RICO conspiracy under 18 U.S.C. § 1962(d) does not require an overt act); *United States v. Shabani*, 513 U.S. 10 (1994) (controlled substances conspiracy under 21 U.S.C. § 846 does not require an overt act); *United States v. Whitfield*, 543 U.S. 209 (2005) (money laundering conspiracy under 18 U.S.C. § 1956(h) does not require an overt act); see also 18 U.S.C. §§ 1349, 1951. Thus an overt act is not an element of the conspiracies charged here.

5

Once the existence of the conspiracy is independently proven, only slight evidence is necessary to link a particular defendant to that conspiracy. *E.g., United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998); *United States v. Poulos*, 895 F.2d 1113, 1117 (6th Cir. 1990); *United States v. Mayes*, 512 F.2d 637, 647 (6th Cir. 1975); *Poliafico v. United States*, 237 F.2d 94, 104 (6th Cir. 1956). "Although mere presence alone is insufficient to support a guilty verdict, presence is a material and probative factor which the jury may consider in reaching its decision." *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991). Even if a defendant joins after the inception of the conspiracy, and plays only a minimal role, he may be found guilty of conspiracy. *United States v. Clark*, 732 F.2d 1536, 1539-40 (11th Cir. 1984). To be criminally liable it is only necessary that a defendant know the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance. *United States v. Hodges*, 935 F.2d at 772; *United States v. Mayes*, 512 F.2d at 647. If one is working with others for accomplishment of a common purpose or objective, he may be convicted as a co-conspirator. *United States v. Klein*, 560 F.2d 1236, 1243 (5th Cir. 1977), *cert. denied*, 434 U.S. 1073 (1978).

Participation in a criminal conspiracy need not be proven by direct evidence; the common purpose and plan "may be inferred from a development and a [collection] of circumstances." *Poliafico v. United States*, 237 F.2d at 104; *see also United States v. Hodges*, 935 F.2d at 773. The absence of direct proof of the agreement generally results from the secret nature of the conspiracy itself. "Secrecy and concealment are essential features of [a] successful conspiracy. The more completely they are achieved, the more successful the crime." *Blumenthal v. United States*, 332 U.S. 539, 557 (1947). Because the nature of a conspiracy entails secrecy, "the agreement and members' participation in it must often be established by way

6

of inference from the surrounding circumstances." *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990).

A formal or explicit agreement is not essential to the formation of a conspiracy. *Iannelli v. United States*, 420 U.S. 770, 777 n. 10 (1975), *overruled on other grounds by Brown v. Ohio*, 432 U.S. 161 (1977); *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). "[A] tacit or material understanding among the parties is sufficient to show a conspiracy." *Id*. at 161. *See also, United States v. Arboleda*, 929 F.2d 858, 870 (1st Cir. 1991); *United States v. Hoelscher*, 914 F.2d 1527, 1534 (8th Cir. 1990); *United States v. Hughes*, 891 F.2d 597, 601 (6th Cir. 1989). The agreement may be inferred from acts done in pursuit of the criminal purpose. *Direct Sales Co. v. United States*, 319 U.S. 703, 714 (1943); *United States v. Hitow*, 889 F.2d 1573, 1577 (6th Cir. 1989).

Each member of the conspiracy does not have to be an active participant in every phase of the conspiracy. If the member is a party to the general agreement, he may be convicted as a co-conspirator. *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990); *United States v. Sophie*, 900 F.2d 1064, 1080 (7th Cir. 1990); *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986). A party to a conspiracy need not know the number of his confederates. *United States v. Andolschek*, 142 F.2d 503, 507 (2d Cir. 1944). A defendant may be convicted of conspiracy charges even though he does not know the identity of all his co-conspirators. *Id*.; *United States v. Sullivan*, 903 F.2d 1093, 1098 (7th Cir. 1990); *United States v. Daily*, 921 F.2d 994, 1008 (10th Cir. 1990); *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990); *United States v. Goble*, 512 F.2d 458, 464-5 (6th Cir. 1975). Nor must he have detailed knowledge of the entire scope of the operation, the role played by each member, or the division of the spoils. *Poliafico v. United States*, 237 F.2d at 104. There is no requirement that a co-conspirator receive any reward, financial or otherwise, from the venture. *Id*. at

7

106-7.  Thus, knowing participation in the criminal conspiracy for friendship or family ties, rather than financial gain, is not a defense to a conspiracy charge.

In presenting its case, the government may properly introduce evidence of actions in which the defendant did not participate, as long as those actions are part of the conspiracy.  In *United States v. Mayes*, the defendant argued that the government was entitled to prove only the actual involvement of each defendant charged, and not the totality of the conspiracy.  The Sixth Circuit held that "the government could prove the entire scope of the conspiracy, though one defendant's role in it was limited."  512 F.2d at 645.  *See also United States v. Kelley*, 849 F.2d 999, 1003-4 (6th Cir. 1988).

## III.   Evidentiary Issues

### A.   Statements of Co-conspirators as Verbal Acts

The initial inquiry regarding statements in a conspiracy case must be whether the particular out-of-court statement is hearsay.  An out-of-court statement or assertion is hearsay only if "offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Any statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay.

The Supreme Court discussed the admissibility of out-of-court statements by co-conspirators as non-hearsay in *Anderson v. United States*, 417 U.S. 211 (1974).  *Anderson* involved a prosecution for conspiracy to cast fictitious votes.  The Supreme  Court approved the use of statements by a co-conspirator at an election hearing.  These statements were offered as evidence of the underlying motive of the conspiracy, not as proof of the matter asserted.  *Id*. at 219-20, 222.  *See also United States v. Lopez*, 584 F.2d 1175, 1179 (2d Cir. 1978).

In *A Modern Approach to Evidence*, Lempert and Saltzburg discuss verbal acts of co-conspirators and note:

> Conspirators' liability ... derives from the fact that the activity of the enterprise they have joined is itself illegal.  Thus, statements of conspirators which promote the ends of the conspiracy are properly analyzed as not hearsay if offered as actions of the conspiracy.  If conspirators' statements are designed to achieve the goals of the conspiracy, they are verbal actions taken for illegal ends and may be proved as such.  Just as conspirators are mutually responsible for physical action taken on behalf of the conspiracy[,] so are they responsible for verbal action.

Richard O. Lempert & Stephen A. Saltzburg, *A Modern Approach to Evidence* 375 (1977).

An example of such a situation would be where co-conspirators A, B, and C are involved in the distribution of cocaine.  The government calls A as a witness to testify that he was given the cocaine by B, that B then gave him directions to a certain place and instructions to phone C at a certain number for further instructions.  Under a proper analysis, the words spoken between A and B are verbal acts in furtherance of the conspiracy and thus not hearsay.

There are times when one co-conspirator will make a statement relating to the events of the conspiracy, yet have received the information on which he bases his statement, from an unidentified party.  In the case of *United States v. Aponte-Suarez*, 905 F.2d 483 (1st Cir. 1990), a member of the conspiracy testified that the defendant was unable to return from Columbia on one occasion because somebody had overloaded the plan with cocaine.  It became apparent that the co-conspirator who testified to this statement did not know the actual identity or whereabouts of the person who supplied him with this information.  Upholding the admission of this statement, pursuant to the co-conspirator exclusion to the hearsay rule, the court noted that any person who knew the purpose and circumstances of the flight sufficiently to transmit this information was in all likelihood a member of the conspiracy himself.

9

Out-of-court statements used *circumstantially* are not hearsay since the primary focus of inquiry is what inferences can be drawn from the fact that the words were spoken and not the truth of the statement.  Statements may be used for their value as circumstantial evidence if the jury can infer from the statement alone, or in relation to other evidence, the existence or non-existence of a fact at issue.  The fact at issue however cannot be a fact asserted in the statement itself.  Such a statement which proves a fact indirectly is circumstantial evidence of the conspiracy.

Often, the mere utterance of words is circumstantial evidence, regardless of their truth.  In the previous example involving co-conspirators A, B, and C, the fact that B tells A to call C for further instructions is certainly circumstantial evidence of C's involvement in an illegal scheme between the three parties.  The truth of the statements is not the primary value of this evidence.

In a similar vein, detailed statements attempting to place the blame on others may be circumstantial evidence that an individual committed the crime since only the perpetrator could demonstrate knowledge of certain facts.  *United States v. Green*, 680 F.2d 520, 523-4 (7th Cir. 1982).

## B.    Co-conspirators' Extra-judicial Statements

Statements of co-conspirators are admissible against all defendants proven to be members of the conspiracy, where such statements are made during the course of, and in furtherance of, a conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 443-4 (1949); *United States v. Etheridge*, 424 F.2d 951, 967 (6th Cir. 1970).  As noted previously, a statement made by other co-conspirators prior to the time that a particular conspirator joins the scheme is nevertheless admissible against that conspirator, provided a showing is made that he became a member.  *United States v. United States Gypsum Co.*, 333 U.S. 364, 393 (1948).  As noted by the Seventh Circuit in *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987), "statements

10

made during the course of and in furtherance of a conspiracy, even in its embryonic stages, are admissible against those who arrive late to join a[n] [on]going [conspiracy]."

In certain circumstances even post-arrest statements may be admitted as co-conspirator statements. Where there exists evidence that the overall conspiracy is still active, post-arrest statements may be considered as taking place during and in furtherance of the conspiracy. Such statements are therefore admissible as proof of the conspiracy. *United States v. Harris*, 542 F.2d 1283, 1301 (7th Cir. 1976); *United States v. Register*, 496 F.2d 1072, 1078-9 (5th Cir. 1974).

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement is not hearsay if ... [it is] a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." It is well-established that an out-of-court declaration of a co-conspirator is admissible against a defendant if the government demonstrates: (1) that a conspiracy existed; (2) that the defendant against whom the statement is offered was a member of the conspiracy; and (3) that the statement was made in the course and in furtherance of the conspiracy. *United States v. Hoelscher*, 914 F.2d 1527, 1539 (8th Cir. 1990); *United States v. Lewis*, 759 F.2d 1316, 1338-9 (8th Cir. 1985); *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979); *United States v. Enright*, 579 F.2d 980, 985 (6th Cir. 1978). A statement admitted pursuant to Federal Rule of Evidence 801(d)(2)(E) presents no Confrontation Clause violation, *Bourjaily v. United States*, 483 U.S. 171, 181-3 (1987), nor does it require a showing of unavailability on the part of the declarant, *United States v. Inadi*, 475 U.S. 387, 394-9 (1986).

Courts have applied a liberal standard in determining whether a statement is made in furtherance of a conspiracy. *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988); *United States v. Lewis*, 759 F.2d 1316, 1340 (8th Cir. 1985); *United States v. Gibbs*, 739 F.2d 838, 845 (3d Cir. 1984). Statements that further

11

the objectives of the conspiracy can take many forms, including statements made to recruit potential co-conspirators. *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). Any statement which is part of the "information flow" between co-conspirators, intended to help each perform his role, may be admitted as a statement made in furtherance of the conspiracy. *United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988).

It has been held that statements to co-conspirators which are necessary to keep them abreast of the conspiracy's progress or status are in furtherance of the conspiracy and thus admissible under Rule 801(d)(2)(E). *United States v. Maldonado-Rivera*, 922 F.2d 934, 958-9 (2d Cir. 1990); *United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir. 1987); *United States v. Potts*, 840 F.2d 368, 371 (7th Cir. 1987); *United States v. Plotke*, 725 F.2d 1303, 1309-10 (11th Cir. 1984). Further, statements by conspirators which provide reassurance or serve to maintain trust and cohesiveness among the members are made in furtherance of the conspiracy and thus are also admissible. *United States v. Ascarrunz*, 838 F.2d 759, 761, 763 (5th Cir. 1988); *United States v. Lewis*, 759 F.2d 1316, 1348 (8th Cir. 1985). Similarly, statements made by a co-conspirator during the pendency of the conspiracy to an undercover government agent or informant are admissible under 801(d)(2)(E). *United States v. Mealy*, 851 F.2d 890, 901 (7th Cir. 1988); *United States v. Lewis*, 759 F.2d 1316, 1348 (8th Cir. 1985). Statements made by a co-conspirator to obtain the confidence of one involved in the conspiracy or to allay their suspicions have been held to be in furtherance of the conspiracy and thus admissible under the co-conspirator exception to the hearsay rule. *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988); *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. 1981). Statements boasting the anticipated success of the plan are also admissible under this rule. *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988); *United States v. Miller*, 664 F.2d 94, 98 (5th Cir. 1981).

The determination of admissibility is a preliminary question of fact governed by Rule 104. Such questions are decided solely by the trial judge and not the jury. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Enright*, 579 F.2d 980, 987 (6th Cir. 1978). In making its determination as to the admissibility of co-conspirators' statements, the court may consider any relevant evidence, including the statements sought to be admitted. *Bourjaily v. United States*, 483 U.S. 171, 178-81 (1987); *United States v. Hoelscher*, 914 F.2d 1527, 1539-40 (8th Cir. 1990); *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979).

As to the order of proof, *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979) recognized that the trial court has considerable discretion in determining which of several procedures may be utilized. The *Vinson* court recognized several acceptable methods, including that of admitting the "hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Id.* at 153. This method has been historically recognized as appropriate, and has been adopted by the court for this case.

## C. Admission of a Statement of a Defendant

The government intends to offer statements made by some defendants to agents who were investigating this case. Rule 801(d)(2)(A) of the Federal Rules of Evidence provides:

> (d) *Statements which are not hearsay.*
>
> A statement is not hearsay if ...
>
> (2) *Admission by party-opponent.* The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity ....

It is an axiomatic principle that declarations made by defendants themselves are not hearsay but rather qualify as independent evidence. "Any and all statements of an accused person, so far as not excluded by the doctrine of

13

confessions ... are  usable  against  the accused  as admissions  and are not hearsay." *United States v. Evans*, 572 F.2d 455, 488 (5th Cir. 1978).  *See also*, *United States v. Matlock*, 415 U.S. 164, 172 n. 8 (1974) (Relying on Rule 801(d)(2)(A), the Supreme Court held that a "party's own statements offered against him at trial are not hearsay."); *United States v. Archbold-Newball*, 554 F.2d 665, 676 (5th Cir. 1977) (incriminatory admissions, as related at trial by witnesses, are not hearsay); 4 John H. Wigmore, *Evidence in Trials at Common Law* § 1048 (James H. Chadbourn rev., 1970) ("The statements made out of court by a party opponent are universally deemed admissible, when offered against him.").

Although the out-of-court statements of an opposing party are not hearsay when offered against him under Rule 801(d)(2)(A), there is no exception to the hearsay rule which permits a defendant in a criminal case to offer his own out-of-court statements through another witness.

"When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States v. Yates*, 698 F.2d 828 (6th Cir. 1983). In *United States v. Gaertner*, 705 F.2d 210 (7th Cir. 1983), the court affirmed the exclusion of an informant's out-of-court statements regarding a "loan agreement" allegedly made between the defendant and the informant, because the statements were hearsay,  since they were offered for the truth of the matter asserted.

The defendants in the instant case may seek to introduce their own out of court statements to prove the truth of a matter asserted in such statements.  Any such effort should fail, because those statements are hearsay.

Relatedly, the informant's side of a tape-recorded conversation with a defendant is admissible and does not raise hearsay or Confrontation Clause issues, as such statements are not admitted for their truth, but rather to make a

14

defendant's responses intelligible to the jury and recognizable as admissions. *United States v. Jordan*, 810 F.2d 262, 264 (D.C. Cir. 1987).

### D.    Adoptive Admissions

The leading case on adoptive admissions by possession of documents is the Sixth Circuit opinion in *United States v. Marino*, 658 F.2d 1120, 1124-5 (6th Cir. 1981). In that case, the government admitted several documents found in the defendant's possession, including airline tickets, which were offered to prove the truth of the matter asserted, that is, that the defendants traveled in interstate commerce. The Sixth Circuit held that:

> [T]his evidence was admissible because the defendants' possession of the tickets and the other documents constituted an adoption. Just as silence in the face of an accusation may constitute an admission to its truth, possession of a written statement becomes an adoption of its contents. Adopted admissions are not hearsay and may be admitted into evidence.

*Id*. at 1125 (citations omitted). *See also*, *United States v. Canieso*,  470 F.2d 1224, 1232 N. 8 (2d Cir. 1972); Fed. R. Evid. 801(d)(2)(B).

The rationale of the *Marino* case is persuasive and has been applied in other circuits. In *United States v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984), two business cards seized from the defendant contained telephone numbers, a room number, and an address. Other evidence established that this number and address referred to locations where co-conspirators were staying and where cocaine was transferred. The Ninth Circuit followed the *Marino* decision and admitted the evidence as an adoptive admission.

### E.    Prior Consistent Statements

Federal Rule of Evidence 801(d)(1)(B), in pertinent part, reads:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement

15

> is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

As noted by the Rule itself, the charge of recent fabrication or improper motive need not be express before prior consistent statements may be admitted. *United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir. 1979). In *Baron*, the court stated that "[t]he fact that defense counsel may not have intended to imply that [the witness'] story was fabricated [recently] is irrelevant if that inference fairly arises from the line of questioning he pursued." *Id*. Thus, if defense counsel on cross examination implies that the declarant's testimony is fabricated or is the result of improper influence or motive, the declarant's prior consistent statement may be admitted to rebut this implication. *See*, *United States v. Lawson*, 872 F.2d 179, 182 (6th Cir. 1989); *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir. 1982); *United States v. Lombardi*, 550 F.2d 827, 828 (2d Cir. 1977).

Additionally, the Sixth Circuit has consistently rejected the argument by defendants that prior statements are inadmissible if they are made after the supposed motive to falsify arose. *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir. 1982). The trial judge need only "examine the circumstances under which the statement was made and make a determination of the statement's relevancy and probity." *United States v. Lawson*, 872 F.2d 179, 182 (6th Cir. 1989). The court in *Lawson* acknowledged that "[w]hile these factors are more likely to be found where the statement was made prior to the alleged discrediting influence, temporal priority should *not* be a condition precedent to admissibility." *Id*. (emphasis added). *See*, *United States v. Montague*, 958 F.2d 1094, 1096-7 (D.C. Cir. 1992); *United States v. Hamilton*, 689 F.2d 1262, 1273 (6th Cir. 1982). Also, "The Fifth and Eleventh Circuits have long held that the consistent statement need not have been made prior to the time that the alleged motive to fabricate arose." *United States v.*

16

*Montague*, 958 F.2d 1094, 1097 (D.C. Cir. 1992) (quoting *United States v. Pendas-Martinez*, 845 F.2d 938, 942 n. 6 (11th Cir. 1988)).

**F.      Background Information**

It is proper for the government to call as its first witness a law enforcement officer who is familiar with the investigation and has first-hand knowledge of how the investigation was conducted. *United States v. Moore*, 651 F.3d 30, 60-61 (D.C. Cir. 2011). Such a witness can, for example, testify to background information about the investigation's initiation, its duration and scope, and its methods, based on the agent's personal knowledge. *Id.*; *United States v. Flores-de-Jesus*, 569 F.3d 8, 19 (5th Cir. 2009). Thus a law enforcement officer may properly "describe a complicated government program in terms that do not address witness credibility" so long as she does not offer "tendentious testimony." *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003).  The agent may properly describe, based on personal knowledge, how an investigation was initiated, what law enforcement entities were involved, and what investigative techniques were used. *Moore*, 651 F.3d at 61.

A government agent may also give testimony about out-of-court statements and information received from others, if not offered for the truth of the statements but to show the background of the investigation. *United States v. Goosby*, 523 F.3d 632, 638 (6th Cir. 2008). Accordingly in *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997) it was proper for DEA agents to testify about information received from an informant which led to an undercover purchase of drugs from the defendant. *Accord, United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990).  In this regard, testimony offered "to explain why the officers and agents made the preparations that they did ... [and to] outline . . . the background of the investigation" is not hearsay.  *United States v. Love*, 767 F.2d 1052, 1063-4 (4th Cir. 1985).

In *United States v. Freeman*, 816 F.2d 558 (10th Cir. 1987), the trial court admitted statements of a confidential informant made to a DEA agent. The statements of the confidential informant were admitted during the direct examination of the DEA agent. Rejecting the defendant's claim of error based on a hearsay argument, the *Freeman* court stated: "Agent McNerman's testimony relative to discussions with the Kansas City Police Department and the confidential informant was not offered to prove the truth of the matter asserted; rather, it was admitted to explain preparations and steps in the government's investigation of [the defendant]." *Id*. at 563. The court continued its analysis and held that the probative value of supplying the jury with an understanding of the background of the investigation, and resulting actions of the agents, was more probative than prejudicial. The court in *United States v. Lazcano*, 881 F.2d 402 (7th Cir. 1989), rejected similar hearsay arguments by the defendant stating that the testimony which was derived from out of court sources was not offered to prove the truth of the matter asserted, but rather to "set the context in which the DEA investigation originated." *Id*. at 407.

## G. Impeachment

**Rule 608(b). Specific instances of conduct.**

**Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:**

> **(1) the witness; or**

> **(2) another witness whose character the witness being cross-examined has testified about.**

> **By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.**

Fed. R. Evid. 608(b)

Rule 608(b) is frequently invoked when defense counsel seeks to impeach the credibility of government witnesses. The very terms of the rule indicate that the rule allows for impeachment on a collateral matter; extrinsic evidence of the act that must be probative of untruthfulness is not allowed. As such, it is a rule of limited admissibility. Rule 608(b); *United States v. Manske,* 186 F.3d 770, 774 (7th Cir. 1999). The Rules of Evidence allow this impeachment as an exception to the general rule that character evidence is not admissible to prove action in conformity with the trait of character, that is, propensity. *See* Fed. R. Evid. 404(a)(3).

The following cases are indicative of the type of conduct into which one may inquire under Rule 608(b). Not surprisingly, according to *United States v. Wilson*, 985 F.2d 348, 351-52 (7th Cir. 1993), perjury and bribery involve dishonesty. A defendant was properly asked about possessing stolen tools in *United States v. Lambinus,* 747 F.2d 592, 598 (10th Cir. 1984). In *United States v. Girdner,* 773 F.2d 257, 260 (10th Cir. 1985), the trial court did not abuse its discretion "in allow cross-examination of appellant's previous falsehoods and deceitful actions in the ballot fraud scheme." The defendant was properly asked about a letter he had written in which he had "falsified his name, his occupation, the name of his business and the purpose in seeking information about official government identification," in *United States v. Reid,* 634 F.2d 469, 473-74 (9th Cir. 1980).

A case that carefully draws the distinction between acts probative of truthfulness or untruthfulness and those not is *United States v. Simonelli,* 237 F.3d 19, 23 (1st Cir. 2001). In that case, the defendant was cross-examined about altering time cards, inflating bills, and stealing records. That cross-examination was deemed proper. However, the court held that the defendant should not have

19

been asked about violating an anti-gratuity policy because there was no demonstration of the "content of the anti-gratuity policy or whether the alleged violation bespoke of untruthfulness." *Id.* at 24.  The court in *Manske* recognized the opposite concept, that although "the specific instance of conduct may not facially appear relevant to truthfulness, closer inspection [may] reveal that it bears on that issue." *Manske*, *supra,* at 775

In determining whether cross-examination under Rule 608(b) is permissible, courts have looked to the wording of the question.  For instance, in *United States v. Lashmett,* 965 F.2d 179, 183 (7th Cir. 1992), the cross-examiner should have asked the witness about his dishonest act, rather than his being accused of a dishonest act.

One further limitation on the questioning of a witness pursuant to Rule 608(b) bears mention.  The Advisory Committee note to Rule 608(b), effective September 1, 2003, states that the extrinsic evidence prohibition in the rule (which will be discussed in more detail below) prohibits reference to the consequences of the alleged dishonest act.  For example, according to the note, counsel may not mention "that a witness was suspended or disciplined for the conduct that is the subject of impeachment . . . ."  This note is discussed in *United States v. Whitmore,* 384 F.3d 836 (D.C. Cir. 2004).

Rule 608(b) cross-examination is subject to the balancing test embodied in Rule 403.  *Whitmore, supra*; *United States v. Olivo,* 80 F.3d 1466, 1470 (10th Cir. 1996).  This balancing test is the same is used in other contexts: the district court is required to balance the probative value against the dangers of unfair prejudice, cumulative testimony, and the like.  A judge's discretion under Rule 403 also extends to excluding cross-examination when it is cumulative.  *Olivo, supra,* at 1471.  In that multi-defendant case, one of the defendants complained that he was not able to ask a government witness about a pending false insurance claim charge.

The defendant sought to make this inquiry when the witness was recalled in rebuttal.  In part because one of the co-defendant's counsel had asked about this charge when the witness was called on the government's case-in-chief, the trial court ruled that additional cross-examination on the subject would be repetitive and cumulative.  The exclusion under Rule 403 was upheld by the Tenth Circuit.

The case law is consistent with the rule's mandate that no extrinsic evidence can be offered should a witness deny the impeaching act under Rule 608(b). *United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990); *Olivo, supra,* at 1471.

One other limitation on the use of Rule 608(b) for impeachment exists, at least in the Ninth Circuit.  If the impeaching act has resulted in a conviction, then the impeachment must be under Rule 609 (with its restrictions); impeachment under Rule 608(b) is foreclosed.  *United States v. Osazuwa*, 564 F.3d 1169, 1174 (9th Cir. 2009).

**Rule 609. Impeachment by Evidence of Conviction of Crime**

**(a) General rule.—For the purpose of attacking the character for truthfulness of a witness,**

**(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and**

**(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.**

\* \* \*

Fed. R. Evid. 609**.**

The basic presumption of Rule 609 is "that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  *United States v. Estrada*,

21

430 F.3d 606, 617 (2d Cir. 2005).  Accordingly, felony convictions, as well as misdemeanor convictions where the elements of the crime required proof of an act of dishonesty or false statement, constitute impeaching material.  The rule, however, contains limitations upon a defendant's use of convictions of a government witness at trial.

The Rule separates convictions into two classes: (1) run of the mill felonies, and (2) felonies and misdemeanors with an element requiring the proof of a dishonest act or statement.  As to the second set of crimes, the trial court has no discretion to prohibit their use for impeachment.  *Estrada, supra,* at 615; *United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008); *United States v. Brashier,* 548 F.2d 1315, 1326-27 (9th Cir. 1976); *United States v. Smith,* 551 F.2d 348, 362 (D.C. Cir. 1976); *United States v. Seamster*, 568 F.2d 188, 190 (10th Cir. 1978).

As to all other felonies, Rule 609(a)(1) governs their use for impeachment purposes.  For all witnesses other than a criminal defendant, the witness may be impeached if the trial court is satisfied that the balancing test set forth in Rule 403 is met, *i.e.,* that the probative value of impeaching with the conviction is not substantially outweighed by the dangers listed in Rule 403, particularly unfair prejudice.

Ordinarily, when a witness is cross-examined about a prior conviction, questioning is limited to the name of the offense, the date of the offenses or counts, the number of the offenses or counts of the conviction and the sentence.  *See United States v. Howell,* 285 F.3d 1263, 1267-68 (10th Cir. 2002) (collecting cases). If the witness's prior felony conviction is for a truthfulness related offense, then some inquiry into the nature of the offense and the specific conduct resulting in the conviction will be appropriate. *United States v. Hurst*, 951 F.2d 1490, 1501 (6th Cir. 1991). But if the offense does not involve truthfulness or honesty, then cross examination should be limited to the name of the offense, its date, and the sentence.

22

### H.    Anticipated Impeachment

As a tactical decision, government counsel frequently decide to elicit, on direct examination, evidence from a witness which counsel anticipates will be used by the defense to impeach or attack the credibility of a witness.  This testimony may relate to a variety of subjects such as plea agreements, grants of immunity, or prior inconsistent statements by the witness.  Occasionally, defense counsel object to the government's direct examination of a witness relating to these issues.  However, caselaw supports the government's decision to elicit this type of testimony on direct examination:

> There is no reason ... to deny to a prosecutor the opportunity to follow the football adage that "the best defense is a good offense" and make the tactical decision to inform the jury of the witness' status before defense counsel launches the attack on credibility.

*United States v. Adamo*, 742 F.26 927, 945 n. 25 (6th Cir. 1984). A prosecutor is thus entitled to question his own witness about a prior conviction, or other impeachment information, the "remove the sting" of the anticipated cross-examination. *United States v. Modena*, 302 F.3d 626, 632 (6th Cir. 2002).

### I.    Refreshing Recollection

Federal Rule of Evidence 612 provides that a witness may use a writing, either while testifying or before testifying, to refresh his memory.  If a witness states in response to a question that he is unable to recall the information requested, he may use any writing to refresh his recollection while testifying, even if that writing was not made by the witness himself.  *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975); *United States v. Conley*, 503 F.2d 520, 522 (8th Cir. 1974).  The admission of such testimony lies within the discretion of the trial judge.  *Id.*  The witness whose memory needs to be refreshed may examine the writing and then, if his recollection is refreshed, testify on the basis of the refreshed recollection.

The reliability of the memoranda used to refresh recollection need not be established before the witness is permitted to say whether his recollection is refreshed. *United States v. Riccardi*, 174 F.2d 883, 889 (3rd Cir. 1949). The reliability or truthfulness of the writing is relevant only to a determination of the weight and credibility to be accorded the witness' testimony. *United States v. Jackson*, 451 F.2d 259, 261 (5th Cir. 1971). Additionally, the memorandum used need not be a contemporaneous account of the event it describes. *Fanelli v. United States Gypsum Co.*, 141 F.2d 216, 217-18 (2d Cir. 1944).

## J.      Admission of Tape-recorded Conversations

As indicated in a previous section of this trial brief, statements between co-conspirators are admissible under Federal Rule of Evidence 801(d)(2)(E). Also, as previously discussed, statements between a defendant and an undercover agent are admissible as a party-opponent admission pursuant to Federal Rule of Evidence 801(d)(2). The fact that such a statement may have been tape-recorded does not change the admissibility analysis.

Title 18, United States Code, Sections 2511(2)(c) and (d) provide exceptions to "wiretapping," if consent is given by one of the parties to the conversation. There is no expectation of privacy, within the meaning of *Katz v. United States*, 389 U.S. 347 (1967), that one party to a conversation will not repeat what has been said by the other. *Hoffa v. United States*, 385 U.S. 293, 302 (1966). The Fourth Amendment is not violated because an undisclosed agent simultaneously records a conversation with an electronic device on his person. *United States v. White*, 401 U.S. 745, 751 (1971); *Lopez v. United States*, 373 U.S. 427, 438-9 (1963).

The elements of a proper foundation for the admission into evidence of a tape recording are as follows:

> (1)      The recording device was capable of taping the conversation now offered in evidence.

(2)     The operator of the device was competent to operate the device.

(3)     The recording is authentic and correct.

(4)     Changes, additions, or deletions have not been made in the recording.

(5)     The recording has been preserved in a manner that is shown to the court.

(6)     The speakers are identified.

(7)     The conversations elicited were made voluntarily and in good faith, without any kind of inducement.

*United States v. Jankowski*, 713 F.2d 394, 398 (8th Cir. 1983). *See also*, *United States v. Jones*, 730 F.2d 593, 597 (10th Cir. 1984) (rejecting inflexible set of criteria for authenticating tape recordings). Thus, testimony by a Drug Enforcement Administration agent as to training and experience, the placement of the recording device, a description of the equipment, and the chain of custody of the tapes constitutes proper authentication of the tapes. *United States v. Gorel*, 622 F.2d 100, 106 (5th Cir. 1979). Such testimony raises the "presumption of official regularity" which makes out a *prima facie* case for admission. *United States v. Cortellesso*, 663 F.2d 361, 364 (1st Cir. 1981). Once the government presents this foundation testimony, the party challenging the tape bears the burden of demonstrating that the tape is inaccurate. *United States v. Rengifo*, 789 F.2d 975, 978 (1st Cir. 1986). *See United States v. Cortellesso*, 663 F.2d 361, 364 (1st Cir. 1981).

A tape containing inaudible or unintelligible portions is admissible unless the unintelligible sections are so substantial as to render the recording, as a whole, untrustworthy. *United States v. Nicoll*, 664 F.2d 1308, 1314 (5th Cir. 1982), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (1984); *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir. 1979). In *United States v. Slade*, 627 F.2d 293, 301-2 (D.C. Cir. 1980), the trial judge noted that he had not understood portions of the tapes, which were poor in quality. To assist the jury's

25

comprehension, the trial judge allowed a second playing of the tapes, testimony by the speakers as to what was said, and substantial use of transcripts. The District of Columbia Circuit held that this method of presenting the tapes did not constitute reversible error.

As to the identification of the speakers on a tape-recorded conversation, "[t]he standard for the admissibility of an opinion as to the identity of a speaker is merely that the identifier has heard the voice of the alleged speaker at any time." *United States v. Rizzo*, 492 F.2d 443, 448 (2d Cir. 1974). Even if the witness has had minimal exposure to the voice or has only heard it a single time, any objections to such testimony go to the weight and not the admissibility of the voice identification. *Id.* at 448; *United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979). *See also*, Fed. R. Evid. 901(b)(5).

Upon a proper foundation of authenticity and accuracy, it is permissible to admit a summary tape of selected conversations from original recordings. *United States v. Denton*, 556 F.2d 811, 815-16 (6th Cir. 1977); *United States v. Whitaker*, 372 F.Supp. 154, 164 (M.D. Pa.), *aff'd*, 503 F.2d 1400 (1975); Fed. R. Evid. 1006. In *Denton*, the Sixth Circuit held that a single master tape of selected recorded conversations was admissible, as the procedure saved the court much time and inconvenience.

## K.      Admission of Photocopies

Photocopies are admissible pursuant to Federal Rules of Evidence 1002 and 1003.  These rules provide:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Fed. R. Evid. 1002.

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Fed. R. Evid. 1003.

## L.      Nicknames or Alias Names

In the instant case, accomplice witnesses knew and identified various defendants by alias names and nicknames.  This is a result no doubt from the fact that many of the defendants used them.  As many courts have recognized, the prosecution may introduce evidence of a defendant's alias or nickname if the evidence aids in the identification of the defendant, *United States v. Williams*, 739 F.2d 297, 299 (7th Cir. 1984); *United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981); *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972), or in some way

directly relates to the proof of the acts charged in the indictment, *United States v. Williams*, 739 F.2d 297, 299 (7th Cir. 1984), *United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981).

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

*s/ Sheldon N. Light*
SHELDON N. LIGHT (P28798)
CHRISTOPHER GRAVELINE (P69515)
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9732
sheldon.light@usdoj.gov
christopher.graveline2@usdoj.gov

Dated: February 10, 2012

28

## Certificate of Service

I hereby certify that on February 10, 2012, I electronically filed the foregoing document  with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Richard Helfrick, Esq.
Michael Rataj, Esq.
Randall Roberts, Esq.
Mark Satawa, Esq.
Henry Scharg, Esq.
Christopher Seikaly, Esq.
Todd A. Shanker, Esq.
William Swor, Esq.
James Thomas, Esq.
Arthur Weiss, Esq.

s/ Sheldon N. Light
SHELDON N. LIGHT (P28798)
Assistant U.S. Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226-2311
313.226.9732
sheldon.light@usdoj.gov