UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff

-vs-

D-7 THOMAS WILLIAM PIATEK,

                    Defendant

_____/

Case No. 2:10-cr-20123

HONORABLE VICTORIA A ROBERTS

## TRIAL BRIEF RE: LIMITATIONS ON ADMISSIBILITY OF LAY OPINION AND EXPERT OPINION TESTIMONY FROM LAW ENFORCEMENT OFFICERS

ARTHUR JAY WEISS (P 25225)
Attorney for Defendant PIATEK
30445 Northwestern Highway
Suite 330
Farmington Hills Michigan 48334-3102
(248) 855-5888
arthurweiss@ajweisslaw.com

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

United States v Anchrum, 590 F 3d 795
    (9th Cir 2009).      1

United State v Barrow, 400 F 3d 109
    (2d Cir 2005).      1

United Sates v Cruz, 363 F 3d 187
    (2d Cir 2004).      1, 12, 13

United States v Dukagjini, 326 F 3d 45
    (2d Cir 2003).      1, 6, 10

United States v Figueroa-Lopez, 125 F 3d
    1241 (9th Cir 1997).      8

United States v Freeman, 498 F 3d 893
    (9th 2007).      1, 5

United States v Garcia, 413 F 3d 201
    (2d Cir 2005).      2, 3, 4

United States v Garcia, 291 F 3d 127
    (2d Cir 2002).      7

United States v Grinage, 390 F 3d 746
    (2d Cir 2004).      1, 6

United States v Guitierrez-Farias, 294 F 3d
    657 (5th Cir 2002).      15

United States v Hermanek, 289 F 3d 1076
    (9th Cir 2002), cert denied, 537 US
    1223, 123 S Ct 1336, 154 L Ed 2d
    1081 (2003).      9

United States v Ibarra, 493 F 3d 526
    (5th Cir 2007).      15

United States v Kaplan, 490 F 3d 110
    (2d Cir 2007).      6, 7

## TABLE OF AUTHORITIES

Page

FEDERAL CASES (Continued)

United Sates v Mendoza-Medina, 346 F 3d 121
    (5th Cir 2003).    16

United States v Morris, 576 F 3d 661
    (7th Cir 2009).    14

United States v Williams, 212 F 3d
    1305 (DC Cir 2000).    10

United States v Young, 745 F 2d 733
    (2d Cir 1984).    2


FEDERAL RULES OF EVIDENCE

Rule 701    2,3,4,5,6,7,8,9,10

Rule 702    2,4,5,8,9,10,12,14

Rule 704    14, 15


SECONDARY AUTHORITIES

D Hassin, How Much is To Much? Rule 704 (b)
    Opinions on Personal Use vs Intent to Distribute,
    55 U Miami L Rev 667, 668 (July 2001).    14

J Moreno, What Happens when Dirty Harry
    Becomes an (Expert) Witness for the Prosecution,
    79 Tulane L Rev 1, 3 (Nov 2004).    2, 14

P Gomez, It is not so Simply Because an
    Expert Says it is So, 34 St Mary's L J
    581, 582 (2003).    13

I.

The judiciary "has frequently cautioned as to the risk presented by allowing a law enforcement officer to testify as to both a fact and an expert witness." United State v Barrow, 400 F 3d 109, 124 (2d Cir 2005) (Citations omitted). Accord: United States v Grinage, 390 F 3d 746, 749-752 (2d Cir 2004); United Sates v Cruz, 363 F 3d 187, 194-197 (2d Cir 2004); United States v Dukagjini, 326 F 3d 45, 53-56 (2d Cir 2003).

> In [United States v Freeman, 498 F 3d 893 (9th Cir 2007)] we warned of the dangers inherent in permitting investigating police officers-in that case a "case agent"-to testify as both percipient and expert witness and we highlighted four "concerns" with the practice. 498 F 3d at 903. First, we expressed concern "that a case agent who testifies as an expert receives 'unmerited credibility' for lay testimony." Id (quoting United States v Dukagjini, 326 F 3d 45, 53 (2d Cir 2003)). Second, we noted that "expert testimony by a fact witness or case agent can inhibit cross-examination" because a "failed effort to impeach the witness as expert may effectively enhance his credibility as a fact witness." Id (internal quotation marks omitted). Third, "there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's sweeping conclusions about appellants' activities." Id (internal quotation marks omitted). Fourth, there is a danger that some "jurors will find it difficult to discern whether    the witness is relying properly on his general experience and reliable methodology, or improperly on what he has learned of the case." Id. United States v Anchrum, 590 F 3d 795, 803 (9th Cir 2009).

While the courts "have not categorically prohibited the practice,,, [they have urged district [judges] to exercise particular vigilance to ensure that the witness's dual role does not impair the jury's ability properly to evaluate credibility." United States v Barrow, supra, 400 F 3d at 124 (Citations omitted).

> Specifically, a court must ensure that the reliability of the witness's expert opinions is not improperly enhanced by a jury's assumption that the witness has knowledge of the defendant's activities that goes "beyond the evidence at trial"…Similarly, a witness's status as an expert cannot be allowed to enhance his credibility as a fact witness, particularly if he testifies to "facts" in broad, general terms, without the specifics necessary to proper jury evaluation. See United States v Feliciano, 223 F 3d [102, 121 (2d Cir 2000)]. Id at 124 (Citations omitted). See

1

also, United States v Young, 745 F 2d 733, 766 (2d Cir 1984) (Newman, J, concurring).

## II.

In the aftermath of September 11, "Americans have apparently heeded the US government's advice to prepare for terror attacks, emptying hardware store shelves of duct tape." Before rushing out to buy duct tape, you should be forewarned that according to the United States Court of Appeals for the District of Columbia, duct tape is a "tool of the narcotics trade." This means that a police officer expert testifying for the prosecution may properly tell the jury that duct tape "is often used 'by people in the drug world to bind hands, legs, and mouths of people who are either being robbed in the drug world or who need to be maintained.'" J Moreno, What Happens when Dirty Harry Becomes an (Expert) Witness for the Prosecution, 79 Tulane L Rev 1, 3 (Nov 2004) (Footnotes omitted).

Rule 701 of the Federal Rules of Evidence provides "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within th e scope of Rule 702." These three (3) foundational requirements must be satisfied by "the proponent of [the] lay opinion testimony...." United States v Garcia, 413 F 3d 201, 211 (2d Cir 2005) (Citation omitted).

Rule 701 requires lay opinion testimony to be based on the witness's personal perceptions. See Fed R Evid 701 (a). The "traditional objective" of the rule is, after all, to afforded the trier of a fact "an accurate reproduction of the event" at issue...Recognizing that eyewitnesses sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts, the law permits such witnesses to testify as to their personal perceptions in the form of inferences or conclusory opinions...In short, Rule 701 represents no departure from Fed R Evid 602: "A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter." Rather, Rule 701 simply recognizes lay opinion as an acceptable "shorthand" for

2

the "rendition of facts that the witness personally perceived." Id at 212 (Citations omitted).

The Court of Appeals in Garcia presented an illustration of this maxim.

[W]hen an undercover agent participates in a hand-to-hand drug exchange with a number of persons, the agent may well testify that, in his opinion, a particular participant, "X", was the person directing the transaction. Such an opinion is based on his personal perception of such subjective factors as the respect various participants showed "X," their deference to "X" when he spoke, and their consummation of the deal only upon a subtly signaled approval by "X." By allowing the agent to state his opinion as to a person's role in such circumstance, Rule 701 affords the jury an insight into an event that was uniquely available to an eyewitness. In this respect, the rule recognizes the common sense behind the saying that, sometimes, "you had to be there." Id at 211-212.

However, this example is contrasted with the situation when "an agent relies on the 'entirety, or totality' of information gathered in an investigation to offer a 'lay opinion' as to a person's culpable role in a charged crime, he is not presenting the jury with the unique insights of an eyewitness's personal perceptions....Thus, in such circumstances, the investigatory results reviewed by the agent—if admissible—can only be presented to the jury for it to reach its own conclusion." Id at 212.

In United States v Garcia, supra, 413 F 3d at 210, the admissibility of "Agent Klemick's testimony...Garcia [in Klemick's opinion] was a 'partner with Francisco Valentine in receiving cocaine from Walmer DeArmas" was at issue.

Klemick's [testimony] indicates that his opinion was not limited to his personal perceptions, but drew on the total information developed by all the officials who participated in the investigation leading to Garcia's arrest...Precisely because Rule 701 limits admissibility of lay opinions at trial to those based only on personal perceptions, an opinion such as Agent Klemick's, which appears to have been based on the totality of information gathered by various persons in the course of an investigation, was not admissible before a jury." Id at 212-213.

3

The appellate court also opined the pertinent testimony was not "helpful" to the jury's "clear understanding of the witness' testimony or the determination of a fact in issue." Id at 213 (Citation omitted).

> Klemick's opinion did more than provide a "summary" of Garcia's words and actions—by whomever they were observed. It told the jury that Klemick, an experienced DEA agent, had determined, based on the total investigation of the charged crimes, that Garcia was culpable member of the conspiracy. Such an opinion cannot be equated with that of an undercover officer who, in testifying to his direct dealings with a group of persons, may offer an opinion as to what the words and actions witnessed conveyed about the relative relationships of the participants. The latter opinions helps the jury gain "an accurate reproduction of the event" actually witnessed by the agent...It does not tell them that unspecified information, which may or may not be received in evidence, establishes a defendant's guilt...[I]f such broadly based opinion testimony as to culpability were admissible under Rule 701, "there would be no need for the trial jury to review personally any evidence at all." The opinion witness could merely tell the jury what result to reach. This, however, is precisely what the second foundation requirement of Rule 701 is meant to protect against. Id at 214 (Citations omitted).

"In 2001, Rule 701 was amended to provide that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge." Id at 215 (Citation omitted).

> [A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life.
>
>     \*        \*        \*
>
> The purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed R Crim P 16....Thus, in considering the third prerequisite for lay opinion testimony, a court must focus on the "the reasoning process" by which a witness reached his proffered opinion. Id at 215 (Citations omitted).

In United States v Garcia, supra, 413 F 3d at 216, the Court of Appeals held the complained of testimony violated this prerequisite of FRE 701 as well.

> In this case, the government made no attempt to demonstrate that Klemick's challenged opinion was informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical or other

4

specialized knowledge. Indeed, it appears to have considered the basis of his opinion irrelevant, arguing that Klemick could express an opinion as to various persons' roles in the charged conspiracy as long as the opinion was "reached in the course of his investigation" and "based on their investigative work"…We hold that the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion so based and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience. The record in this case indicates that Klemick's expertise in narcotics trafficking did so inform the challenged opinion.

In United States v Freeman, 498 F 3d 893, 900 (9th 2007), one (1) of appellate issues was whether the District Court impermissibly allowed Agent "Shin to testify in an unreliable manner."

Although Shin's interpretation of ambiguous statements [of the appellants] was permissible under Fed R Evid 701, "the interpretation of clear statements is not permissible, and is barred by the helpfulness requirement of both Fed R Evid 701 and Fed R Evid 702." United States v Dicker, 853 F 2d 1103, 1109 (3d Cir 1988) (emphasis in original); see also Scott v Sears, Roebuck & Co, 789 F 2d 1052, 1055 (4th Cir 1986) (noting that Rule 702 "makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance"). Id at 905.

Moreover, "[i]t is necessary that a lay witness's 'opinions are based upon…direct perception of the event, are not speculative, and are helpful to the determination' of factual issues before the jury." Id at 905 (Citation omitted).

Some of Shin's testimony, however, consisted of either speculation or repetition of already clear statements. For example, Shin's unnecessary interpretation of "particulars" to signify "details" was not helpful to the jury, thereby violating Rule 701. As well, Shin's opinion as to the reason why Freeman wished to get off the telephone while driving was speculation and therefore was erroneously admitted. Id at 905.

Care must also be given to assure the officer, when testifying as a lay witness, "neither rel[ies nor] convey[s] hearsay…" Id at 905.

Shin interpreted Freeman's statement in one call to Brown that "I'm going to bring that to you at 1:00 tomorrow" to mean that Freeman would bring money to Brown that Freeman owed to Mitchell. Shin testified that his conclusion was

5

based in part on interviews with Mitchell, who had told investigators that Freeman owed Brown money for cocaine that had been delivered before the call. Because Shin was testifying as a lay witness in this regard, his discussion of Mitchell's hearsay statements should not have been admitted. Id at 905.

Moreover, in United States v Grinage, 390 F 3d 746, 749-751 (2d Cir 2004), the issue was whether Special Agent Scott Seeley-Hacker, of the Drug Enforcement Administration, properly testified, pursuant to FRE 701, when he interpreted various intercepted telephone conversations of the accused. It was the government's position the agent did not proffer expert testimony, buy simply "was helpful for the jury to have benefit of the testimony of an individual who reviewed every call and could assist the jury by placing the [accused's] call in context and highlighting its similarities to other calls in furtherance of the conspiracy." (Internal quotation marks omitted).

> This argument fundamentally misunderstands Rule 701 (b). Were it to be accepted, there would no need for the trial jury to review personally any evidence at all. The jurors could be "helped" by a summary witness for the Government, who could not only tell them what was in the evidence but tell then what inferences to draw from it. That is not the point of lay opinion evidence.

> \*　　　　　　\*　　　　　　\*

> [T]he Government's claim that the agent's testimony was based solely on his listening to the telephone conversations is not supported by the record. The agent testified to the jury that his interpretations were "based on my knowledge of the entire investigation"...[H]e testified at great length about his background and expertise as a drug investigator and explained at length his role as case agent.

> \*　　　　　　\*　　　　　　\*

> In sum, the agent's testimony as to his interpretations of the calls went beyond permissible lay opinion testimony Rule 701 (b) because rather than being helpful to the jury, it usurped the jury's function. Id at 750-751. Accord: United States v Dukagjini, supra, 326 F 3d at 52-54.

Furthermore, in United States v Kaplan, 490 F 3d 110, 117-119 (2d Cir 2007), the Court of Appeals was confronted, inter alia, with the question of whether a government

6

informant, Galkovich, when relating conversations with the accused, Kaplan, could proffer "lay opinion testimony regarding Kaplan's knowledge of the fraud" for which he was charged.

> The government's evidence failed to demonstrate that Galkovich's lay opinion testimony was "rationally based on the perception of the witness." Fed R Evid 701 (a). We note that Rule 701 (a) requires that lay opinion testimony be both (a) based on the witness's first-hand perceptions and (b) rationally derived from those first -hand perceptions.
>
> As to the first of these requirements, Rule 701 (a) reflects, in part, the Rules' more general requirement that "[a] witness may not testify as to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed R Evid 602; see also United States v Durham, 464 F 3d 976, 982 (9th Cir 2006) ("opinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection-that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts" (internal quotation marks omitted)). When Galkovich was asked to articulate the basis of his opinion, he answered, "I based it on the only thing I could base it on, which is my experience there, what people said about [Kaplan], my conversations with [Kaplan], everything that I [had] been involved in. That's what my opinion could be based on." Although Galkovich asserts that his testimony was based in part on first-hand experience...his response was extremely vague. Thus, Galkovich's testimony failed to show that his opinion as to Kaplan's knowledge was rationally based on facts he had observed.
>
> We are therefore unable to conclude, as we must under Rule 701, that the opinion he offered as rationally based on his own perceptions....Because the Government did not lay an adequate foundation, Galkovich's testimony expressing his opinion as to Kaplan's knowledge was not admissible. Id at 119 (Citations omitted) (Emphasis supplied by the Court).

Similarly, in United States v Garcia, 291 F 3d 127 (2d Cir 2002), the question of lack of foundation for informant lay opinion testimony was presented.

> Rule 701 (a) states that a lay witness only may offer opinions that are "rationally based on [his or her] perception." The rational-basis requirement "is the familiar requirement of firsthand knowledge or observation." United States v Rey, 958 F 2d 1206, 1215 (2d Cir 1992)...Thus, a witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. "When a witness has not identified the objective bases for this opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701...because there is no way for the court to assess whether it is rationally based on the witness's perception..." Rea, 958 F 2d at 1216.

In this case, Toro Balcarcel testified about what he meant when he said certain things and what he understood Garcia to mean by certain words. Clearly, Toro Balcarel had personal knowledge of what he meant when he spoke to Garcia, and his status as a participant in the conversation is sufficient to demonstrate the basis of this opinion....However, to the extent that Toro Balcarcel offered an opinion about what he understood Garcia to mean, he was indirectly offering his opinion about what Garcia knew....

The government did not lay a proper foundation explaining the basis for Toro Balcarcel's opinion of Garcia's knowledge. Toro Balcarcel explained <u>his</u> participation in the conversation, why <u>he</u> spoke in code, and what <u>he</u> meant by the code he used. Toro Balcarcel did not offer any explanation for how <u>Garcia</u> could know that they were speaking in code.

*     *     *

Because the government did not lay a foundation for Toro Balcarcel's testimony expressing his lay opinion of Garcia's knowledge and understanding, the court abused its discretion in allowing the testimony. <u>Id</u> at 140-142 (Citations omitted) (Emphasis supplied by the Court).

III.

It is important to recognize the distinction between Rule 701 and 702 in this context. The Court in <u>United States</u> v <u>Figueroa-Lopez</u>, 125 F 3d 1241 (9th Cir 1997) was presented with such a predicament.

[T]he agents' observations in the instant case are not "common enough" to "require such a limited amount of expertise." Here, the agents testified that the following behaviors were consistent with an <u>experienced</u> drug trafficker: 1) counter surveillance driving; 2) use of code words to refer to drug quantities and prices; 3) use of a third-person lookout when attending a narcotics meeting; 4) use of a rental car to make the drug delivery; 5) hiding the cocaine in the door panels of a car; and 6) dealing in large amounts of very pure cocaine. These "observations" require demonstrable expertise; in fact, several times the Government instructed the witness to answer questions "based upon your training and experience." Additionally, one agent testified that his familiarity with the fact that narcotics traffickers sometimes speak in code is based upon the training that he had at the DEA Academy. <u>Id</u> at 1245-1246 (Citation omitted) (Emphasis supplied by the Court).

In the appellate court's estimation, "[t]he Government's argument [the foregoing is merely lay expert opinion] simply blurs the distinction between Federal Rules of Evidence

8

701 and 702." Id at 1246.

> Lay witness testimony is governed by Rule 701, which limits opinions to those "rationally based on the perception of the witness." Rule 702, on the other hand, governs admission of <u>expert</u> opinion testimony concerning "<u>specialized knowledge</u>" [Emphasis supplied by the Court]. The testimony in this case is precisely the type of "specialized knowledge" governed by Rule 702. A holding contrary would encourage the Government to offer all kinds of specialized opinions without pausing first properly to establish the required qualifications of their witnesses. The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702. Otherwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death. Surely a civilian bystander, or for that matter a raw DEA recruit would not be allowed to interpret for the jury [appellant's] behavior in the parking lot…as that of an "experienced" trafficker merely because that person was an eyewitness to the same. Id at 1246.

Moreover, even an experienced law enforcement officer's "expert" testimony should not be unlimited. In <u>United States</u> v <u>Hermanek</u>, 289 F 3d 1076, 1093 (9th Cir 2002), <u>cert denied</u>, 537 US 1223, 123 S Ct 1336, 154 L Ed 2d 1081 (2003), for example, "Appellants contend that the government failed to establish a reliable basis for [Agent] Broderick's interpretations of words and phrases he encountered for the first time in this case as referring to cocaine "and the Court of Appeals agreed "that the record fails to demonstrate that he did."

> Rule 702 assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." [Citations omitted]
>
> \*                  \*                  \*
>
> By its own terms, the offer of proof describes Broderick's method for interpreting words "commonly used" in the drug trade—ie, words with which Broderick was "familiar." It therefore offers no basis for assessing the reliability of Broderick's interpretation of words and phrases encountered for the first time in this case.
>
> \*                  \*                  \*
>
> Broderick's qualifications on the stand also did not establish that his interpretations of new words and phrases were supported by reliable methods. The government offered only Broderick's general qualifications—his extensive experience and knowledge of drug terminology based on several years

9

investigating the cocaine trade...and interpreting hundreds of intercepted communications. These qualifications are relevant, but , standing alone, they neither explain nor establish the reliability of Broderick's interpretations of new words and phrases. It is well settled that bare qualifications alone cannot establish the admissibility of scientific expert testimony. [Citations omitted]. Id at 1093-1094.

Similarly, the issue of an inadequate evidentiary foundation was also presented in

United States v Williams, 212 F 3d 1305 (DC Cir 2000).

Williams challenges the admission of Duncan's affirmative reply on redirect examination to the following question: "In your experience as a patrol officer, is it common for people who use drugs or sell drugs to carry weapons for protection?" Id at 1309 (Citation omitted).

The appellate court, "[f]inding the link between drug users and guns

tenuous,...[then] look[ed] to the foundation of Duncan's testimony." Id at 1309.

The foundation of Duncan's opinion linking drug users and possession of weapons is anything but firm. Fewer than one dozen arrests involving possession of a firearm is not sufficient grounding to qualify him as an expert under Rule 702 of the Federal Rules of Evidence (FRE), particularly without evidence establishing that any of those arrests involved a drug user [Emphasis supplied by the Court]. If, instead, we view his testimony as having been admitted under Rule 701, FRE, we question whether Duncan's answer was rationally based on his perceptions. He did not establish a factual basis for credible opinion testimony regarding the likelihood of drug users being armed...We conclude that the district court's ruling admitting arguably relevant testimony over objection despite lack of foundation...constitutes error. Id at 1309-1310 (Citations omitted) (Footnotes omitted).

In United States v Dukagjini, supra, 326 F 2d at 56, "Appellants contend that

Biggs' testimony improperly relied on hearsay evidence, including statements from non-

testifying co-conspirators, and disclosed hearsay evidence to the jury....This argument implicates

Rule 702, which governs the basis of opinion testimony by experts, and the Confrontation Clause

of the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right...to be confronted with witnesses against him." (Citation omitted).

Throughout much of Biggs' testimony, his conclusion appear to have been drawn largely from his knowledge of the case file and upon his conversation with

10

co-conspirators, rather than upon his extensive general experience with the drug industry.

*                    *                    *

Biggs's testimony illustrates two examples of how an expert on drug code can stray from the scope of his expertise. First, he testified about the meaning of conversations in general, beyond the interpretation of code words. This testimony often interpreted pronouns and completely ambiguous statements that were patently not drug code, For example, when Biggs testified that the statement "what's left over there in that can" referred to "probably...bundles of heroin," he essentially used his knowledge of the case file and witness interviews that the participants in the conversations were heroin dealers to conclude that they were discussing heroin.

*                    *                    *

Second, Biggs interpreted ambiguous slang terms that only at first glance might appear to be code or jargon. For example, Biggs testified that McGee's statement "tell 'em to bring...the six or whatever" referred to "a quantity of heroin," and McGee's statement "tell him to come with the ten" meant that he requested "a quantity of heroin, probably ten bundles." "Six" and "ten" may have been veiled statements to drugs, but it appears that these phrases were ambiguous in the way that the generic "your thing," "what's over there" and "one or two" were ambiguous. There was no evidence that these phrases were drug code with fixed meaning either within the narcotics world or within this particular conspiracy....Id at 55 (Citations omitted).

The problems emanating from this prosecution were magnified because fo the

dual-nature of the witness' testimony.

We recognize that the problems we have highlighted do not arise solely in expert testimony by case agents and fact witnesses; any expert in a criminal trial has the potential to deviate from the scope of his expertise. However, these difficulties are more likely to be encountered when the expert is a case agent or a fact witness because such witnesses are introduced to the case primarily through the investigative lens, rather than a general methodological lens. Case agent experts who are called to testify about both their expert opinions and the facts of the case may easily elide these two aspects of their testimony. Given their role, their perspective, and their focus on the facts, these case agent experts are more likely to stray from the scope of their expertise and to testify about other aspects of the case, including the divulging of hearsay evidence. Id at 55-56.

It is apparent the Court of Appeals was troubled "[a]s the testimony of the case

agent moves from interpreting individual code words to providing an overall conclusion of

11

criminal conduct, the process tends to more closely resemble the grand jury practice, improper at

trial, of a single agent simply summarizing an investigation by others...." Id at 54.

> When an expert is no longer applying his extensive experience and reliable methodology, Daubert teaches that the testimony should be excluded. Moreover, even if the testimony is admissible under Rule 702, it still must pass muster under Rule 403: its probative value must not be substantially outweighed by unfair prejudice.

\*                          \*                          \*

> Biggs's testimony at times departed from the bounds of Rules 702 and 703 and from reliable methodology, as he repeatedly deviated from his expertise on drug jargon.  Although in some cases it may be difficult to discern the line between permissible and impermissible reliance on hearsay, here Biggs' testimony repeatedly crossed that line...Biggs plainly was not translating drug jargon, applying expert methodology, or relying on his general experience in law enforcement.  Rather, he was relying on  his conversations with-non testifying witnesses and co-defendants in order to prove "the truth of the matter asserted" about the meaning of drug conversations....The government argues that the appellants had an opportunity to cross-examine Biggs, but that , of course, if no answer when it is the out-of-court declaration of another, not subject to cross-examination, that is being put before the jury for the truth of the matter asserted. When a court permits a case agent or a fact witness to testify as an expert, there is a significant risk that, if the witness degresses from his expertise, he will be improperly relying upon hearsay evidence and may convey hearsay to the jury.

> Nevertheless, it is plain to us that portions Biggs's statements that he conceded to have been at least partially the product of his out-of-court interviews with the co-conspirators were neither within the permissible bounds of expertise...nor within recognized exceptions to the hearsay rule.  That testimony from an out-of-court source or sources was both accusatory and offered for the truth of the matter asserted....Thus, the district court erred in permitting these aspects of Biggs's testimony in violation of the hearsay rule and the Confrontation Clause. Id at 58-59 (Citations omitted).

Shortly after rendering its decision in Dukagjini, the Second Circuit confronted a

similar question in United States v Cruz, 363 F 3d 187, 193 (2d Cir 2004), wherein "[a]ccording

to Cruz, the district court erroneously allowed Tully to offer expert testimony regarding the

meaning of a phrase that Cruz employed to explain his purportedly unwitting role in Medina's

narcotics transaction....[and the Court] agree[d]."

12

Tully served as member of the surveillance unit of DEA agents…[who] testif[ied] as a fact witness…regarding several statements that Cruz made to him after Tully arrested the defendant. Accordingly to Tully, Cruz explained that he had been present... "to watch" Medina's "back" while Medina "did business" and "[did] a deal."

After Tully testified to this effect, the prosecutor, at the suggestion of the district court, solicited Tully's expert testimony regarding the meaning of the phrase "to watch someone's back." Tully responded to the prosecutor's inquiries by equating individuals who "watch" someone's "back" with "lookouts" in "narcotics transactions." On appeal, Cruz contends, inter alia, that the district court erred by allowing Tully to provide such expert testimony because the meaning of the phrase "to watch someone's back" as neither "code nor esoteric." Id at 193.

After recognizing their "comments in Dukagjini focused, by an large, on the pitfalls associated with the expert testimony of a case agent who also served as a fact witness…those inherent dangers are also ordinarily implicated where any law enforcement official provides the same type of testimony," Id at 195, the Court of Appeals opined "the district court in this instance failed to satisfy its obligations as a gatekeeper. The court not only allowed the government to overreach by admitting expert testimony in regarding the meaning of words that did not fall within the ambit of drug jargon, but also actively assisted the government in leading Tully to stray from the scope of his expertise, " Id at 195-196 (Footnote omitted).

We do not suggest that the aforementioned phrase could never be characterized as a drug code. We simply hold that the government failed to introduce evidence to demonstrate that the phrase constituted drug jargon with a fixed meaning within the narcotics transactions. Under these circumstances, Tully strayed from the scope of his expertise when he offered expert opinions regarding the meaning of this ambiguous phrase and the district court manifestly erred by not allowing the government to elicit such testimony but actively prompting the government to do so. Id at 197.

It is elementary, therefore, the judiciary, in the exercising its "gatekeeping" function, must be vigilant to guard against admission of testimony "[I]t is …so simply because 'an expert says it is so.'" P Gomez, It is not so Simply Because an Expert Says it is So, 34 St Mary's L J 581, 582 (2003) (Footnote omitted).

13

Judges should be especially concerned when an expert's opinions are based solely "on his own subjective observations over the course of his experience, available only to him and in their individual from now almost certainly only imperfectly recalled, if at all." Personal opinion, even when it is based on extensive experience, cannot establish reliability or provide the foundation for expertise. Judges applying Rule 702 should exclude experience-based expertise, such as law enforcement drug jargon, unless the expert can "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." When these threshold requirements are ignored, prosecutors can present conjecture and speculation disguised as expertise, while denying the defense access to information necessary for the effective cross-examination. Judges who fail to screen or limit prosecutors' presentation of police expert testimony create mini-police states by ceding control over the nature and quality of the evidence presented in their courtrooms. What Happens when Dirty Harry Becomes and (Expert) Witness for the Prosecution?, supra, 79 Tulane L Rev at 54 (Footnotes omitted).

## IV.

Rule 704 (b) of the Federal Rules of Evidence provides "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone. See e g, United States v Morris, 576 F 3d 661, 674 (7th Cir 2009).

In grappling with the …application of Rule 704 (b)…, the courts have progressively become more restrictive as to what from expert testimony may take. The one absolute that remains is that the expert may not opine as the defendant's intent at the time the offense was committed. A prosecutor can no longer use strategies such as setting up a hypothetical scenario that mirrors the facts of the case in order to question the expert, or utilizing an arresting officer as the narcotics expert. Both of these tactics have been deemed misleading or confusing to the jury. Finally, the seemingly permissible device of eliciting testimony that possession to certain amounts of a controlled substance is "consistent" with the intent to distribute, or that certain quantities of drugs are "possessed for the purpose of distribution" without reference to the defendant's intent, appears to be increasingly disfavored by the courts. D Hassin, How Much is To Much? Rule

14

704 (b) Opinions on Personal Use vs Intent to Distribute, 55 U Miami L Rev 667, 668 (July 2001) (Footnotes omitted).

Accordingly, in United States v Ibarra, 493 F 3d 526, 532 (5th Cir 2007), when "the district court allowed DEA Agent Friday to testify that in his experience he had never seen a courier entrusted with an amount of cocaine of that size (worth approximately $4 million) without the courier knowing that the was carrying something illegal…[t]he Government concede[d on appeal] that the admission of this testimony was an abuse of discretion…."

Similarly, in United States v Guitierrez-Farias, 294 F 3d 657, 661-662 (5th Cir 2002), appellant "challenge[d] the portion of Agent Afanasewicz's testimony in which he described the manner in which drug trafficking organizations generally select people to transport their drugs and the extent to which those selected are aware of the drugs that are transporting." (Footnote omitted). The Court of Appeals found "that the district court abused its discretion by permitting the challenged portion of [the agent's] testimony…." Id at 663.

> An expert in a criminal case may not…offer "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged….Such issues are matters for the trier of fact alone."

*       *       *

> Having carefully reviewed the record, we agree with Gutierrez that the government exceeded its bounds when it solicited the above testimony…To begin, we have doubts about whether [the agent's] testimony regarding what a person in Gutierrez's position would have known about the drugs he was transporting can fairly be considered "expert." Rather than assisting the jury to understand evidence presented or complicated fact issues in the case, Agent Afanasewicz presented the jury with a simple generalization: In most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle…More importantly, we believe Agent Afanasewicz's testimony crosses the borderline long recognized by this court between a "mere explanation of the expert's analysis for the facts" and a "forbidding opinion on the 'ultimate legal issue'" in the case…The clear suggestion of Agent Afanasewicz's testimony is that, because most drivers know there are drugs in their vehicles, Gutierrez must have known too. Although admittedly Afanasewicz did not say the magic words-"In my expert opinion, Gutierrez knew the marijuana was in the tires"-we believe his

15

testimony amount to the functional equivalent of such a statement.  Id at 662-663 (Citations omitted) (Footnote omitted).

Utilizing this analytical framework, the Court of Appeals in United Sates v Mendoza-Medina, 346 F 3d 121, 127-129 (5th Cir 2003), held "the district court abused its discretion in admitting Agent Warzech's testimony.  Warzecha made the same generalized statements regarding distributors having to trust their couriers and included the profile that couriers often bring their wives and children along."

In so opining, the Court further rejected the government's contention the "testimony was permissible expert background testimony which never specifically identified [appellant's] conduct as consistent with a drug courier profile or broached the issue of [appellant's knowledge of the drugs in the trailer," Id at 128, as well as discounting the prosecution's argument "the court's instruction that the expert's opinions could be accepted or rejected by the jury was sufficient," Id at 128.

Respectfully submitted,

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant PIATEK
30445 Northwestern Highway
Suite 330
Farmington Hills Michigan 48334-3102
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: February 29 2012

16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Case No. 2: 10-cr-20123

        Plaintiff

                  HONORABLE VICTORIA ROBERTS

-vs-

D-7 THOMAS WILLIAM PIATEK,

        Defendant

                      /

## CERTIFICATE OF SERVICE

ARTHUR JAY WEISS, counsel of record for THOMAS WILLIAM PIATEK, a

Defendant in the above-entitled matter, hereby Certifies that on the 29th day of February 2012,

he served all counsel of record with a copy of Defendant Piatek's Trial Brief Re: Limitations on

Admissibility of Lay Opinion and Expert Opinion Testimony From Law Enforcement Officers

and Certificate of Service relative to the above-entitled matter by electronic means.

                /s/Arthur Jay Weiss
                ARTHUR JAY WEISS (P 25225)
                Attorney for Defendant PIATEK
                30445 Northwestern Highway
                Suite 330
                Farmington Hills, Michigan 48334-3102
                (248)855-5888
                arthurweiss@ajweisslaw.com