UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                               Case No: 10-20123
                                                Honorable Victoria A. Roberts

MICHAEL MEEKS, D-6

    Defendant.
_____/

## ORDER DENYING DEFENDANT MEEKS' MOTION
## TO INTRODUCE DAN MURRAY'S 911 RECORDING FROM APRIL 2010

During trial, on February 29, 2012, Defendant Michael Meeks sought to introduce into evidence a tape recorded 911 call from April 2010; Government witness Dan Murray told the 911 operator that his wife stabbed him. During the first part of the recording, Mrs. Murray can be heard telling the operator that Murray was chasing her with a knife and trying to stab her. The Government objected and the Court reserved ruling, asking Meeks to provide law to support introduction of the recording. On March 5, 2012, Meeks filed a memorandum of law to support introduction of the recording. (Doc. # 714). The Court reviewed the authority provided, and will not admit the recording.

Meeks argues that the recording is admissible as extrinsic evidence of Murray's prior inconsistent statement under Fed. R. Evid. 613(b), because Murray admitted on the stand that his wife did not stab him and that he lied to police about the incident. Thus, Rule 608(b)'s proscription against the use of extrinsic evidence to prove specific

1

instances of a witness's conduct to attack credibility is not implicated, Meeks says.

While Rule 613(b) permits the admission of extrinsic evidence of a witness' prior inconsistent statement under some circumstances, courts typically do not allow impeachment of a witness' testimony by extrinsic evidence on collateral matters. *See, e.g.*, *United States v. Catalan-Roman*, 585 F.3d 453, 468-69 (1st Cir. 2009) ("Under the common law of evidence and the law of this circuit, impeachment by extrinsic evidence is normally restricted to impeachment on matters that are not collateral."); *United States v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996) ("[U]nder 613(b) a witness may not be impeached on a collateral matter by use of extrinsic evidence of prior inconsistent statements. Contradiction of a witness by prior inconsistent statements may be shown only on matter material to the substantive issues of the trial.") (citation omitted); *United States v. Harris*, 542 F.2d 1283, 1306 (7th Cir. 1976) ("Under the traditional rule, a witness may not be impeached by contradiction on collateral matters elicited on cross-examination."). "A matter is considered collateral if the matter itself is not relevant in the litigation to establish a fact of consequence, i.e., not relevant for a purpose other than mere contradiction of the court testimony of the witness." *Catalan-Roman*, 585 F.3d at 468-69 (citations and internal quotation marks omitted). Clearly, the incident between Murray and Mrs. Murray is collateral to the issues in this trial.

It appears the Sixth Circuit has not dealt directly with the interplay between the "collateral issue rule" and Fed. R. Evid. 613(b), which contains no explicit reference to collateral matters; instead, the Court was only able to find dicta in an unpublished opinion that suggests the Sixth Circuit may disagree with other circuit courts. *See United States v. Lester*, 238 F. App'x 80, 83 (6th Cir. 2007) (per curiam). The relevant

language in that opinion, however, is not binding on this Court, which adheres to the "long . . . established" rule "that the self-contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the case." *Cwach v. United States*, 212 F.2d 520, 530 (8th Cir. 1954); *see also United States v. Grooms*, 978 F.2d 425, 428-29 (8th Cir. 1992) ("Although a prior inconsistent statement is admissible under Rule 613(b) of the Federal Rules of Evidence . . . a witness may not be impeached on a collateral matter by the use of extrinsic evidence . . . .").

Even if the Court did not adhere to this rule, it would still exclude the 911 recording under Fed. R. Evid. 403. In *Catalan-Roman*, the First Circuit observed, "The rule restricting impeachment to non-collateral matters is analogous to Rule 403's relevancy balancing test, which calls for relevant evidence to be excluded when its probative value is substantially outweighed by considerations of undue delay, or waste of time." 585 F.3d at 469 (citations, quotation marks, brackets and ellipses omitted). Under Rule 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The 911 call would waste time and needlessly present cumulative evidence. Murray already admitted to the jury that he made inconsistent statements. He testified that his wife did not stab him, but also admitted on the stand that he initially told the police she did. He testified that he eventually told the police the truth. Therefore, the 911 tape is cumulative of Murray's testimony and his credibility was already impeached.

The cases Meeks cites do not compel a different conclusion. For example, Meeks relies on *United States v. Fonville*, 422 F. App'x 473 (6th Cir. 2011) and *United States v. Winchenbach*, 197 F.3d 548 (1st Cir. 1999). In those cases, the courts upheld impeachment by extrinsic evidence of *non-collateral* matters, as opposed to collateral ones. In *Fonville*, the impeachment involved extrinsic evidence of a prior inconsistent statement that was material to the defendant's defense to an assault charge of self-defense. 422 F. App'x at 482. Likewise, in *Winchenbach*, the witness's prior inconsistency involved a non-collateral matter–whether he was aware that there was cocaine at the defendant's residence where the defendant was charged with distributing cocaine. 197 F.3d at 558. In addition, both cases say Rule 613(b) allows the cross-examiner to impeach a witness with extrinsic evidence of a prior inconsistent statement "*if necessary*." *Fonville*, 422 F. App'x at 481-82; *Winchenbach*, 197 F.3d at 558. The 911 tape is not necessary; rather, it is cumulative. Rule 403 is designed to keep this type of evidence out of a trial.

To the extent Meeks seeks admission of the first part of the recording, where Mrs. Murray is the speaker, Rule 613(b) is inapplicable; the rule applies only to the witness'–that is Dan Murray's–prior statement. Instead, Rule 608(b) applies to Mrs. Murray's statement and her statement is clearly inadmissible as extrinsic evidence of a collateral matter to attack Murray's character for truthfulness. *See* FED. R. EVID. 608(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.").

Likewise, evidence that Murray chased Mrs. Murray with a knife and tried to stab

4

her is cumulative under Rule 403.  While Murray had trouble admitting on the stand that he "stabbed" his wife, he testified that he "cut" her with a knife–a semantical distinction that is not likely to make a difference in the jurors' minds.  Thus, the evidence is cumulative and does not impeach Murray's credibility.

Finally, the Court addresses Meeks' bias argument.  This argument is meritless.  While the Court agrees that a witness' bias is always relevant and extrinsic evidence tending to show bias is admissible to the extent it is not barred by the rules of evidence, *e.g.*, *United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011); *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999), the 911 recording does not reveal Murray's bias against Defendants.   Despite Meeks' suggestion to the contrary, Murray does not bear a "striking resemblance" to the witness, Jay Horne, at issue in *Schledwitz*.  Murray was not presented by the Government as neutral or detached; nor was he presented as an expert witness, as was the case with Horne.  *Schledwitz*, 169 F.3d at 1010, 1014-15.  Instead, Murray was portrayed as an "active participant in the [G]overnment's investigation against [the Defendants]," *id.* at 1010, exactly what the appellant in *Schledwitz* believed the jury should have known about Horne.  Murray's involvement with the criminal investigation against Defendants has not been concealed by the Government; it was consistently exposed and was the subject of extensive examination both on direct and cross.

Meeks' suggestion that the 911 tape reveals a motive to testify in favor of the Government is unavailing.  Any tendency the tape has to suggest Murray had a reason to "slant, unconsciously or otherwise, his testimony in favor of [the Government]," *id.* at 1015 (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)) (defining bias), is

5

outweighed by the considerations mentioned in Rule 403. As already noted, Murray admitted to both cutting his wife and lying to police. Thus, it is not necessary to play the tape to expose any motive Murray might have to testify favorably for the Government.

Meeks' Motion is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 9, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 9, 2012.

s/Carol A. Pinegar
Deputy Clerk