UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,            CASE NUMBER: 10-20123
                                              HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, et al.,

                Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO PROHIBIT THE INTRODUCTION OF DEMONSTRATIVE EXPLOSIVE EVIDENCE IN PART, AND FINDING THE MOTION MOOT IN PART**

**I.    INTRODUCTION**

Before the Court is Defendant David Brian Stone's renewed motion to prohibit the Government from presenting its demonstrative exhibits regarding explosives (Doc. 730). Defendants previously filed a motion in limine, and subsequent motion for reconsideration, seeking to exclude the Government's demonstrations of bomb explosions (Doc. 511, 614). The Court denied both motions, finding that Defendants failed to specify particular objections, and reserved ruling on the admissibility of the Government's demonstrative explosive evidence. Defendant says that there has been a substantial change in circumstances since the Court's rulings, justifying the renewed motion.

Based on the Government's response brief (Doc. 733) and arguments to the Court on March 20, 2012, parts of Defendant's renewed motion are **MOOT**. The remainder of Defendant's motion is **DENIED**.

The Court rules as follows:

- June 2010, Test 1: **Not Admitted**

- June 2010, Test 2: **Admitted**

- June 2010, Test 3: **Admitted**

- June 2010, Test 4: **Not Admitted**

- June 2010, Test 5: **Admitted**

- June 2011 Tests: **Admitted**

## II. BACKGROUND

Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2) Conspiracy to use Weapons of Mass Destruction (18 U.S.C. §2332a(a)(2)); (3) Use and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)); (4) Possessing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §924(c)(1)). Defendants David Stone, David Stone, Jr., and Joshua Stone are charged with various other weapons-related offenses.

During the course of the investigation, the FBI performed a series of tests recreating explosive devices that Hutaree members allegedly built, had the materials to build, or asked Special Agent (SA) Huag to build. On June 3, 2010, FBI Supervisory Special Agent (SSA) Stryker performed five experiments detonating explosive devices. Later, on June 13, 2011, SSA Stryker performed four additional experiments. The results were photographed and videotaped.

### A. June 3, 2010 Tests

**First Test.** The first test concerned a mixture of aluminum nitrate and aluminum.

The mixture was placed in a plastic bag with ball bearings taped to the outside and detonated.

**Second Test.**  The second test concerned explosively formed projectiles, or EFPs.  SSA Stryker built two EFPs using the design allegedly provided to David Stone, Sr. via email on January 20, 2010, and in person on February 6, 2010.  One of the EFPs contained a copper disk as the penetrator, and the other contained an aluminum disk.  The copper disk is seen in the plans provided to SA Huag by David Stone Sr., and the aluminum disk is the same material and approximately the same thickness as a road sign.  The EFPs used C4 as the explosive charge.  The EFPs were detonated next to a police vehicle.

**Third Test.**  The third test involved pipe bombs.  SSA Stryker filled three 2" diameter by 8" long pipe nipples with smokeless power, wrapped the pipe with ball bearings, and detonated one under a police vehicle, one in the in the middle of a 55-gallon steel drum, and one in the middle of a circle of plastic targets.

**Fourth Test.**  The fourth test involved cardboard tubes similar to the ones found at the Tomer Road residence.  The tubes were wrapped with ball bearings, filled with flash powder, and detonated.

**Fifth Test.**  The fifth test concerned three types of shape charges, one made with the bottom portion of a wine bottle, and the other two made with 12-ounce aluminum beverage cans.  The charges were constructed according to plans allegedly provided by David Stone Sr. to SA Haug on March 13, 2010.  C4 was utilized as the explosive charge.

### B. June 13, 2011 Tests

On June 13, 2011, Stryker performed four additional tests. He built four EFPs, two smaller ones from coffee cans, and two larger ones from baked beans cans. The EFPs utilized copper and aluminum disks and were exploded near vehicles using smokeless powder for charge.

## III. DISCUSSION

### A. Law

As the Court noted in its previous orders, the Sixth Circuit allows the use of demonstrative evidence that is relevant, probative, and not unduly prejudicial. *United States v. Baldwin*, 418 F.3d 575, 579-80 (6th Cir. 2005) ([E]xperimental evidence is admissible so long as the evidence is relevant and probative, and experimental evidence is deemed to have probative value if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation.") (internal quotation and citation omitted). The substantially similar standard is flexible; all variables do not need to be controlled. *United States v. Metzger*, 778 F.2d 1195, 1204 (holding that video of FBI re-enactment of explosion in car was properly admitted despite the fact that not every variable was identical). Where the conditions of the reenactment are substantially similar, any dissimilarities go to the weight of the evidence rather than admissibility. *Baldwin*, 418 F.3d at 579. Demonstrative evidence that is probative of an element of the offense should be admitted in all but the most egregious cases. *United States v. Smith*, 502 F.3d 680, 687 (7th Cir. 2007).

The demonstrative evidence is relevant and probative of Count II of the

Indictment, conspiracy to use weapons of mass destruction.  To prove that charge, the Government will need to show that Defendants conspired to use a weapon of mass destruction, defined as any "destructive device" pursuant to 18 U.S.C. § 921.  *See* 18 U.S.C. § 2332a.  Section 921 defines destructive device as:

> (A) any explosive, incendiary, or poison gas--
>
>> (i) bomb,
>> (ii) grenade,
>> (iii) rocket having a propellant charge of more than four ounces,
>> (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
>> (v) mine, or
>> (vi) device similar to any of the devices described in the preceding clauses;
>
> (B) any type of weapon . . . which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; an
>
> (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The demonstrative evidence is relevant because it helps the Government meet its burden of proof that the explosive devices Defendants allegedly conspired to use were weapons of mass destruction under the statute.   18 U.S.C. § 2332a.  *See United States v. Jones*, 124 F.3d 781, 787 (6th Cir. 1997) ("The videotaped explosion of the replica bomb served as evidence to establish that the bomb was a destructive device"); *United States v. McNeil*, 104 Fed.Appx. 294, 303 (6th Cir. 2004) (unpublished) ("[A] replica bomb may be admitted for the purpose of demonstrating the explosive potential of the original bomb.); *see also United States v. Abdulmutallab*, No. 10-2005, (E.D. Mich., September 27, 2011).

Because the demonstrative evidence is relevant, it is admissible if it is substantially similar to the original, and not unduly prejudicial. The Court now turns tp the substantial similarity of each test.

**B.   Analysis**

   **i.   June 3, 2010 Tests**

**Test 1.**  The Government says it does not intend to elicit testimony or show any demonstrative evidence regarding this test.  Defendant's motion is **MOOT** as to test 1.

**Test 2.**  Defendant objects that this test involves the use of C4 plastic explosive material which was not in the possession of the Hutaree.  Therefore, Defendant says this test is not substantially similar to any activities of the Hutaree.  The Government says these EFPs were built using designs provided to SA Huag by Defendant Stone Sr. The Government says these tests are similar to the ones it performed on June 13, 2011, except in the later tests the EFPs utilized smokeless powder rather than C4. Further, the Government says it does not plan to show videos or pictures of these tests, or to elicit testimony regarding these tests beyond a single question: what effect does the use of C4 have on the effectiveness of EFPs made with commercially available materials.

The Government may ask SSA Stryker how the use of C4 changes the effectiveness of EFPs.  Although no member of the Hutaree possessed C4, the evidence shows that Defendant Stone Sr. believed SA Huag could obtain an explosive charge that went "way beyond black" powder.  Defendant Stone Sr. believed SA Huag had access to industrial grade explosives due to his friends at a quarry.  Further, Stone Sr. trusted SA Huag and considered him to be a "good member" of the Hutaree.  It appears that Defendant Stone Sr. believed SA Huag would construct EFPs using a

charge much stronger than black powder, such as C4.  Because Stone Sr. believed SA Huag would construct EFPs using industrial grade explosives, the EFPs ultimately produced by the SSA Stryker satisfy the substantial similarity test.

In addition, allowing the Government to ask the limited question described above does not unfairly prejudice Defendants.  No video or photographic evidence of the demonstration will be before the jury.

Defendant's motion is **DENIED** as to test 2.  The Government may ask the question described above.

**Test 3.**  Defendants object to these tests involving pipe bombs because the 2" diameter, 8" long pipe is not the exact size of the pipe nipples seized from the Tomer Road residence.  The Court does not believe a size difference renders the demonstrations not substantially similar; rather, any dissimilarities here should go to the weight of the evidence.  *See Baldwin*, 418 F.3d at 579.

All of the materials used to make the pipe bombs were readily available to members of the Hutaree.  David Stone Sr. possessed pipe nipples consistent with pipe bombs.  He instructed other members how to construct pipe bombs, and to wrap the pipe bombs in ball bearings.  The Government says the pipe bombs constructed for the demonstration were made using smokeless powder similar to the powder possessed at the Tomer Road house.  Further, the Government says the bombs were constructed in a fashion discussed by Defendants Stone Sr. and Tom Piatak on June 13, 2009.

The pipe bombs constructed by the Government are substantially similar to the ones members of the Hutaree allegedly conspired to possess. Further, because the Government does not intend to play video or show photographs of these tests, there is

no risk of undue prejudice based on "theatrical impact."

Defendant's motion is **DENIED** as to test. 3

**Test 4.**  The Government says it does not intend to elicit testimony or show any demonstrative evidence regarding this test.  Defendant's motion is **MOOT** as to test 4.

**Test 5.**  Defendant objects to test 5 for the same reason as test 3: it involves the use of C4 explosives, which members of the Hutaree never possessed.  The Government says that Defendants collected wine bottles for the purposes of making the type of shape charges used in the demonstration.  Further, the two funnel shaped explosives SSA Stryker made were constructed using plans giving to SA Huag by Stone Sr.

For the reasons stated above regarding test 3, the Court does not believe the use of C4 makes the test not substantially similar.  Defendant Stone Sr. believed that SA Huag has access to more powerful explosives than those the Hutaree already possessed.  Stone Sr. allegedly conspired to obtain these stronger explosives.

Further, the Government does not plan to show pictures or videos of these demonstrations.  Rather, it merely plans to show the effect of the explosives by introducing a metal plate upon which they were detonated.  Because the Government will not show a video or photos of the detonation, there is no risk of unfair prejudice.

Defendant's motion is **DENIED** as to test 5.

### ii. June 13, 2011

Defendants do not lodge a specific objection to these tests.  The Court believes they are admissible.

These tests involve four EFPs which were built using materials readily available

to members of the Hutaree. Coffee or bean cans were used to make the EFPs, and smokeless powder–which members of the Hutaree possessed–was used for the charge. Copper and aluminum disks were used for the projectiles. Aluminum is available on street signs, and the Hutaree allegedly believed they could obtain coppper from SA Huag. Further, members of the Hutaree talked about producing these types of devices, and sent emails with plans.

The Court finds that these tests are substantially similar to EFPs the Hutaree allegedly conspired to use. The Government may introduce them into evidence. Defendant's motion is **DENIED** as to the June 13, 2011 tests.

## IV. CONCLUSION

Defendant's renewed motion to prohibit the Government from introducing demonstrative explosive evidence is **MOOT** in part and **DENIED** in part.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 20, 2012

---
The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 20, 2012.

S/Linda Vertriest
Deputy Clerk

---